CHARLES B. LORE, Attorney General of the State of Delaware, at and by the relation of EVAN C. STOTSEN-BURG, JOHN W. HAWKINS, JESSE SHARP, HENRY F. DURE, WILLIAM BRIGHT, ANNESLY NEWLIN and GEORGE W. SPARKS,

vs.

THE MAYOR AND COUNCIL OF WILMINGTON, THE CITY COUNCIL OF WILMINGTON, JOSEPH L. KILLGORE, the City Treasurer of Wilmington, JOSHUA T. HEALD, PHILIP MCDOWELL, EDWARD TATNALL, JOSEPH TATNALL, and J. CLOUD ELLIOTT.

*New Castle, Feb. T. 1873.*

Upon an information by the Attorney General on the relation of the citizens and taxpayers of the city of Wilmington, the city may be enjoined against purchase of lands for a park, and the incurring of debts or liabilities for the purchase money in excess of the amount of indebtedness which, under its charter, it may lawfully contract.

INFORMATION IN EQUITY.—This was an information filed by the Attorney-General upon the relation of certain citizens and inhabitants of the city to restrain the city authorities from consummating the purchase of certain lands intended for a public park.

At a meeting of the City Council, held May 8th, 1873, a committee called the committee on park, composed of members of the Council, had submitted a report and a resolution which were read ; and on motion, the resolution was adopted by the Council. The report was as follows :

*To the City Council of Wilmington :*

The undersigned, a committee on park, beg leave to report that they have received proposals from the following property owners as follows: From J. T. Heald and Philip McDowell who own the land on the South side of the Brandywine, beginning at Harrison street and following the course of the river to Rattlesnake Run, containing about twelve to fifteen acres, for thirty thousand dollars. Also, from the following property owners on the North side of the river, as follows: Edward Tatnall proposes to sell the land needed, beginning at a point alongside the lower quarry, thence easterly to Seventeeth Street, thence northerly to J. Cloud Elliott's line, including all his woodland as well as the rest of his land lying between this line and the Brandywine River, for one thousand dollars per acre, containing about thirty acres. Mr. Joseph Tatnall proposes to sell some seventeen acres for nine hundred dollars per acre. Mr. Cloud Elliott has about ten acres which he proposes to sell at the rate of twelve hundred dollars per acre.

The Committee would recommend that the offer of J. T. Heald, Philip McDowell, Edward Tatnall and Joseph Tatnall be accepted, and that the land of J. Cloud Elliott spoken of be purchased, provided he will accept the same price as Mr. Joseph Tatnall asks for his property. Your Committee would offer the following resolution :

" *Resolved,* That the committee on park be instructed " to have the grounds, mentioned in the foregoing report, " fully surveyed and report to Council at our next meeting " the precise quantity of land belonging to the different " parties named, the amounts due them, and the manner " in which the payments have to be made, so that Council " can make the necessary arrangements."

At the same meeting, a resolution was also adopted

by the Council, to the effect that the said payments should be made annually and in moderate amounts until the whole of the purchase money should be paid.

At a subsequent meeting of the said Council, June 5, 1873, the same committee submitted another report as follows: "The committee on park beg leave to report "that they have had the various tracts of land surveyed, "which it is proposed to purchase for a public park, and "submit a plat or map of the same;" also the following "statement: "in the tract of land owned by J. T. Heald "and Philip McDowell, exclusive of Lovering avenue, "there is little over twenty acres, price thirty thousand "dollars, of this amount, five thousand dollars in cash is "needed to pay to Mr. Heald as a first payment. The "balance to be paid in annual installments to extend over "a period of eight or ten years, with six per cent interest. "On Mr. McDowell's land, six thousand dollars can remain "for a term of years on bond and mortgage, the balance "to be paid in annual installments as in the case of Mr. "Heald. On the east side of the river, Mr. Edward Tat-"nall has nineteen acres and eighteen perches at one "thousand dollars per acre, amounting to nineteen thous-"and, one hundred and twelve dollars. Five thousand "dollars in cash will be needed to make the first payment "to him, the balance to be paid in annual installments "with interest as before mentioned. Mr. Joseph Tat-"nall has seventeen acres, three roods and twenty-five "perches, price fifteen thousand three hundred dollars "payable in annual installments with interest. Mr. J. "Cloud Elliott has nineteen acres, one rood and three "perches, at nine hundred dollars per acre, making seven-"teen thousand, three hundred and forty-two dollars, "payable in annual installments with interest, making in "the aggregate as follows:

" J. T. Heald and P. McDowell ............ $30,000
"Edward Tatnall ..... ..... ............. 19,112
" Joseph Tatnall ....................... 15,300
" J. Cloud Elliott ....................... 17,342

" Total .... ....................... ..... $81,754

" Your committee would further report that the City "Solicitor has made a thorough examination of titles, liens, " &c., connected with the various tracts of land before men- " tioned, and that everything is now in proper shape for " settlement with the various parties whenever Council " authorizes that to be done. Your committee would, " therefore, ask that they, in conjunction with the City " Solicitor, be instructed to proceed with the matter of " having the deeds drawn and settlement made with the " different parties named in this report, and in accordance "with the terms as reported."

(Signed,)    H. F. PICKELS,    ELI MENDINHALL,
             P. B. HEUSTED,    JOHN G. BAKER,
             PHILIP QUIGLEY,   WM. H. QUINN,
             JAS. R. PHILIPS,  R. T. RICHARDSON.

Pursuant to the action of the City Council, as stated, the city authorities were proceeding with the preparation of the papers necessary for the conveyance to the Mayor and Council of Wilmington of the lands described in the last mentioned report, and to the consummation of the proposed purchase. It was alleged that the lands in question consisted, for the most part, of barren and rugged hillsides, of no value whatever for agricultural purposes, and of little value for building or other purposes, and the price agreed upon was grossly excessive, and that the actual market value of the whole tract was less than twenty-five thousand dollars. Also, that the purchase of these lands would require the outlay of a large sum of money for their improvement, and would be a

fruitful source of expense and extravagance wholly un-warranted by the population or resources of said city.

The legal ground, however, upon which the information was based was, that the purchase of the lands and the creation of the debt for the same were not only wholly without any warrant of authority at law and in gross violation of the rights of the inhabitants and taxables of the city, but also that the creation of the debts and liabilities for the purchase of such lands was in violation of the express provisions of the charter of the city, and the supplements and amendments to the same limiting the amount of the debt of said city which might be lawfully created, contracted or incurred by it.

An injunction was prayed against the City Council and the City Treasurer from further proceedings for the purchase of the lands, and from accepting and receiving any deed or deeds, conveyance or conveyances thereof, and from paying or ordering the payment of any money for or on account of the purchase money thereof, and from executing or delivering any note, bond, mortgage or other security for or on account of purchase money thereof; and also, that all contracts and agreements made by the purchaser of said lands might be decreed to be illegal and void, and for further relief. The bill was sworn and affirmed to by the relators.

On motion of *Spruance* for the relator, a rule to show cause why a preliminary injunction should not issue was granted, and a restraining order, in the meantime, in accordance with the prayer of the bill.

On the return day, *S. M. Harrington* appeared for the defendants, and, by consent, the order was continued until the September Term.

The case proceeded no further, the proposed purchase being abandoned by the City authorities.