CASE 18—PETITION EQUITY—OCTOBER 8.

# Roberts, &c., v. City of Louisville, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. THE POWER OF A MUNICIPAL CORPORATION TO ACQUIRE LAND FOR THE PURPOSE OF ERECTING WHARFS THEREON, and to charge wharfage, is not a necessary incident of its charter, but must, like all its other powers, be derived directly from the Legislature, to be exercised within the limits and upon conditions of the grant.

2. WHARF PROPERTY ACQUIRED BY A CITY UNDER LEGISLATIVE AUTHORITY IS HELD BY IT IN TRUST FOR THE PUBLIC, and the city can not transfer the title or possession; nor can the General Council, when invested by statute with power of control, and burdened with the duty of maintaining, preserving and operating the wharfs, either delegate that power or disable itself from performing that duty. And a court of equity may, if needful, compel the General Council to

| 92 | 95 |
| 104 | 529 |

| 92 | 95 |
| j105 | 355 |

| 92 | 95 |
| 119 | 184 |

| 92 | 95 |
| 133 | 847 |

| 92 | 95 |
| f137 | 524 |

Roberts, &c., v. City of Louisville, &c.

perform the duty of preserving and maintaining the wharf property for the purpose intended.

3. INJUNCTION LIES IN FAVOR OF TAXPAYERS TO PREVENT A MUNICIPAL CORPORATION, and its officers, from making an illegal or wrongful disposition of the corporate property, or from passing an ordinance authorizing such a disposition of the corporate property whenever irreparable injury will be done to the plaintiffs, and they have no adequate remedy at law.

4. INJUNCTION TO PREVENT PASSAGE OF ORDINANCE.—Municipal corporations have a dual character: One, governmental or public, the other, private or proprietary. And the general proposition that a court of equity may not enjoin the passage of a municipal ordinance must be confined in its application to subjects over which the corporation, in its governmental or public character, has discretionary authority.

5. "THE COMMISSIONERS OF THE SINKING FUND" OF THE CITY OF LOUISVILLE, which is a distinct corporation created by that name for specified purposes and invested with limited power, can not hold or control the wharf property of the city, authority to do so being nowhere given by their charter.

6. CASE ADJUDGED.—The General Council of the City of Louisville being about to pass an ordinance authorizing the Mayor of the city to convey to the Commissioners of the Sinking Fund the property acquired and held by the city for wharf purposes, the appellants brought this action to enjoin the city from either passing the ordinance or transferring the property, alleging that the intention was that the Commissioners of the Sinking Fund should transfer the property at discretion to private individuals, thereby preventing public use of the wharves, which is indispensable to the business of plaintiffs and others similarly situated. *Held*—That as the plain legal duty is imposed upon the General Council to hold and control the wharf property for the use of the public, the plaintiffs are entitled to the relief sought. And the fact that the proposed ordinance has been withdrawn from the Council, pending this action, does not affect the plaintiffs' right of action.

T. L. BURNETT, LANE & BURNETT FOR APPELLANTS.

1. The wharf property in question is public and not corporate property, and, without express legislative sanction, the city authorities can not legally sell, convey or lease it, or any part of it. (City of Louisville v. Bank of United States, 3 B. M., 167; Lord v. Scinto, 47 Wis., 387; Matthews v. Alexandria, 68 Mo., 119; Mullarky v. Cedar Falls, 19 Iowa, 25; Gah v. Kalamazoo, 23 Mich., 353; Merriwether v. Garrett, 102 U. S., 472; Alves v. Henderson, 16 B. M., 169; Dillon on Mun. Corp., sec. 445; Augusta v. Perkins, 3 B. M., 440; Buckner v. Augusta, 1 A. K. Mar., 9; Covington v. McMeikle, 18

Roberts, &c., v. City of Louisville, &c.

B. M., 284; Kennedy v. Covington, 8 Dana, 58; Burroughs on Taxation, 457; Police Jury v. Mayor, 37 La. Ann., 642; McPherson v. Foster, 43 Iowa, 48; State v. Mobile, 5 Porter, 287; Lackland v. North Missouri, 31 Mo., 181; Attorney General v. Heishon, 18 N. J., 410; Illinois v. St. Louis, 2 Dillon, 78; Klein v. New Orleans, 99, U. S., 151; Barney v. Keokuk, 94 U. S., 342.)

.2. The fact that the ordinance has been withdrawn affords no reason for dismissing the petition. It was not the passage of the ordinance that was enjoined, but the sale, conveyance or lease of the wharf property, which is still threatened.

:3. The revenues of wharf property can not be made to exceed the cost of its police regulation. (Collins v. Louisville, 2 B. M., 14.)

4. The Commissioners of the Sinking Fund is a corporation of limited powers, and it has no power to own property.

.5. Resident tax-payers have the right to invoke the power of the court to prevent an illegal disposition of the property of the municipality. (Crampton v. Zabriskie, 101 U. S., 1070; Dillon on Mun. Corp., last edition, secs. 914 and 915.)

H. S. BARKER FOR APPELLEES.

The courts have no power to enjoin the passage of illegal or unconstitutional ordinances. (High on Injunctions, second edition, vol. 2, sec. 1243; Dillon on Mun. Corp., third edition, vol. 1, note to sec. 308; Des Moines Gas Co. v. City of Des Moines, 44 Iowa, 508; Montgomery Gaslight Co. v. City Council of Montgomery, 87 Ala., 257; Alpers v. City and County of San Francisco, 32 Fed. Rep., 505; City of Chicago v. Evans, 24 Ill., 55.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

There was introduced in the General Council of the City of Louisville, referred to a joint committee of the Board of Aldermen and Board of Councilmen, and a report agreed by a majority of that committee to be made in favor of passage of the following ordinance: " That the Mayor be, and he is hereby authorized to convey by deed of special warranty to the Commissioners of the Sinking Fund of the City of Louisville, all of the real property fronting on the Ohio river, acquired and held by the city for wharf purposes; said commissioners are to hold said property upon the same trusts and for the same purposes as it is now held by said city, and to have the

same power over and authority to sell, convey, lease, or otherwise dispose of the same, or part thereof, which said city now has. This ordinance to go into effect from and after its passage."

But before the ordinance was reported back by the committee, though on the same day of a regular meeting of the General Council, the plaintiffs (now appellants), commenced this action against the city of Louisville, Mayor, members of the General Council (sued by names), and Commissioners of the Sinking Fund, to obtain an injunction, which was granted, temporarily restraining the General Council passing and the Mayor approving that or any ordinance for like purpose, and the city of Louisville conveying and Commissioners of the Sinking Fund taking possession of, controlling or interfering with any property acquired or held by the city for wharf purposes.

The plaintiffs, who are numerous, state they are residents and owners of property in said city subject to municipal taxation, and engaged there in commercial business; that the city of Louisville has, heretofore, in virtue of acts of the Legislature, and with money procured by taxation, acquired at various places within its corporate limits along Ohio river, land to be held and used, and which has so far been kept and maintained in aid of its commerce and trade, for public wharfs, those using them for business purposes being required to pay wharfage; that although the city of Louisville holds said property for public use without right to transfer to another its power and duty to preserve and maintain public wharfs, and the Commissioners of the Sinking Fund is without right to acquire or hold it for any purpose, yet the General Council, Mayor and Commissioners of the Sinking

Fund have wrongfully and unlawfully agreed and conspired together for the city of Louisville to abdicate its right to and possession of said property, refuse hereafter to preserve and maintain it for the purpose intended, and by deed convey it to the Commissioners of the Sinking Fund, with a view and to the end the latter may sell, convey or transfer it, at discretion, to private individuals, thereby preventing public use of the wharfs, which is indispensable to the business of plaintiffs and others similarly situated.

They further state that said ordinance, already prepared and sent by the Mayor to the General Council in pursuance of the scheme mentioned, will be at once passed, followed by immediate transfer of the property, and irreparable injury thereby done to plaintiffs, unless the injunction be granted; and the Commissioners of the Sinking Fund being insolvent, there will be no adequate remedy at law.

No answer was filed by the Mayor nor any member of the General Council, except A. S. Stoll, of the Board of Aldermen, who, denying he was in favor of the passage of the ordinance, yet admitted it had been sent by the Mayor to the General Council for passage, and would have passed both Boards thereof if the injunction had not been granted.

The city of Louisville, by the City Attorney, answered, denying its alleged want of power to transfer to another the wharf property; and though it was averred the ordinance had, since commencement of the action, been withdrawn, there was no denial it was introduced, referred to a committee and would have been at once passed and the purpose of it carried out, but for the injunction.

The Commissioners of the Sinking Fund, in its answer, denied the free and uninterrupted use of the wharfs is, as alleged in the petition, indispensable to prosecution of the business of the plaintiffs; and, in substance, averred existence of power in the city of Louisville to transfer, and not only its own power, but, because charged with payment of the city's bonded debt, also right to hold and control the wharf property and revenues arising therefrom.

It seems to us the pleadings in this case, independent of any testimony, place beyond question that the Mayor, members of the General Council, or a majority of them, and Commissioners of the Sinking Fund did agree upon the scheme mentioned in the petition for a transfer of the wharf property, and, if not restrained, would have carried it out. And if the power to make such transfer does not exist, that scheme was, as charged, wrongful and unlawful; but whether the injunction sought was in whole or in part the proper remedy, is the question for determination.

The power of a municipal corporation to acquire land for the purpose of erecting wharfs thereon and to charge wharfage, is not a necessary incident of its charter, but must, like all its other powers, be derived directly from the Legislature, of course to be exercised within the limits and upon conditions of the grant. (Dillon, Municipal Corporations, section 110). And looking to the nature and purpose of such special grant, it must be regarded as a trust involving duties and obligations to the public and individuals which can not be ignored or shifted; for the power to acquire implies duty of the municipality, through its governing head, to maintain and preserve wharf prop-

erty for the benefit of the public without discrimination or unreasonable charges for individual use.

In every instance, so far as we have observed, wharf property of the city of Louisville has been acquired under act of the Legislature and paid for by taxation; and in no case is there evidence of legislative intention it should be held otherwise than in trust for use of the public and in aid of trade and commerce.

The wharf property being so held, the city of Louisville can not transfer its title or possession, nor, according to a plain and well-settled principle, can the General Council, which is by statute invested with power of control and burdened with duty of maintaining, preserving and operating the wharfs, either delegate the power or disable itself from performing the duties. (Id., sections 96 and 97.)

It is even more manifest that "the Commissioners of the Sinking Fund," which is a distinct corporation created by that name for specified purposes and invested with limited power, can not hold or control the wharf property—authority to do so being nowhere given by its charter—nor would it be either provident or consistent with the purpose of its creation to so invest it.

We thus have a case where the defendants have either admitted or failed to deny they were about to jointly do an act, not only in our opinion illegal, but of so serious nature as transfer of the title of real property held in trust by the city of Louisville, and change of its control from the General Council, that has its powers and duties in respect thereto prescribed and defined, to a corporation without right to own or hold it, and which, according to an uncontroverted charge in the petition, is insolvent. It

is, moreover, apparent there would be, in case of such transfer, great danger of the wharf property being so managed as to impair its usefulness to the public and seriously injure, if not prevent altogether, the successful transaction of the business of plaintiffs and others ; for it is hard to see what is the purpose of the Commissioners of the Sinking Fund in seeking or accepting possession and control of the property, if not to increase revenue therefrom, by increasing wharfage beyond present, and it may be assumed, reasonable rates ; or else by lease or transfer to particular persons who, in consideration of special privileges or advantages not enjoyed generally, would pay more than now received.

The plaintiffs in this case are engaged in buying and shipping stone coal to Louisville for sale and delivery, which has to be landed at the city wharfs, and the free use thereof at reasonable charges is obviously indispensable to their business; consequently, they would suffer a special and peculiar injury distinct from that of the public in case of either excessive wharfage or obstruction of free, public use of the wharf property.

It is, says Dillon, the prevailing and almost universal doctrine in this country that property-holders or taxable inhabitants have the right to resort to equity to restrain municipal corporations and their officers from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the taxpayers— such as making an unauthorized appropriation of the corporate funds, or an *illegal or wrongful disposition of the corporate property*, or levying and collecting void and illegal taxes and assessments. (Section 914.) And, though the question of power to enjoin illegal and wrong-

ful disposition of corporate property has not been, at the suit of taxpayers, directly presented to and decided by this court, the power of equity in such action to restrain the levying and collecting void and illegal taxes, which is founded on the same principles, has been distinctly rec-ognized and sustained.

Therefore, if, when this action was instituted, the ordinance in question had been already passed, it could un-doubtedly have been maintained against the Mayor and Commissioners of the Sinking Fund, restraining the former from conveying, on behalf of the city of Louisville, title of the property, and the latter from taking possession of or interfering with it; for the plaintiff had legal capacity to bring and prosecute the action, an act not only illegal, but of irreparable injury to them, was intended and about to be committed, and they would have had no adequate remedy at law. But it is contended in argument and seems to have been the ground for dismissing the action, that a court of equity will not enjoin passage by a municipal body of an ordinance or resolution.

In High on Injunctions, section 1243, relied on by counsel, it is said: " It is unquestionably true that purely legislative acts, such as the passage of resolutions, or the adoption of ordinances by a municipal body, even though alleged to be unconstitutional and void, will not be enjoined, since it is not the province of a court of equity to interfere with the proceedings of municipal bodies in matters resting within their jurisdiction, or to control in any manner the exercise of their discretion. A distinction, however, is properly drawn between the case of restraining an alleged act attempted under the authority and sanction of a municipal body and restraining the cor-

poration itself from granting such authority." But in the same section it is conceded that "the question of equitable interference by injunction with the legislative action of municipal bodies has given rise to some apparent conflict of authority and is not wholly free from doubt."

It is said by Dillon, section 308, "to be settled that it is competent for the Legislature to delegate to municipal corporations the power to make by-laws and ordinances with appropriate sanctions which, when authorized, have the force, in favor of the municipality and against persons bound thereby, of laws passed by the Legislature of the State." And, in a note, cases are cited in which is stated the general proposition that courts will not enjoin the passage of unauthorized ordinances and will ordinarily act only when steps are taken to make them available.

Of course if every municipal ordinance has the quality and force of a law of the State Legislature, courts of equity would be without power to enjoin or otherwise interfere with passage of any, because, on account of the peculiar structure of the State government, each of the three departments thereof is distinct and acts in its own sphere independent of the others. But the power delegated to a municipality to legislate is not, as to all subjects, absolute, even within corporate limits. On the contrary, it is not only restricted by statute but also subordinate to settled principles of law and equity, in view of which it is presumed to be delegated; for such a corporation is created for a double purpose and consequently has a dual character—one governmental or public, the other private or proprietary. As said in Oliver v. Worcester, 102 Mass., 489, "the distinction is well established:

between the responsibilities of towns and cities for acts done in their *public* capacity in the discharge of duties imposed on them by the Legislature for their public benefit, and for acts done in what may be called their *private* character, in the management of property and rights voluntarily held by them for their own immediate profit and advantage as a corporation, although inuring, of course, ultimately for the benefit of the public."

It was in reference to its governmental or public character that it was, in the case of the City of Louisville v. Commonwealth, 1 Duv., 295, held that a city or town in this State, "to the extent of the jurisdiction delegated to it by its charter, is but an effluence from the sovereignty of Kentucky, governs for Kentucky, and its authorized legislation and local administration of law are legislation and administration by Kentucky, through the agency of that municipality." But a municipal corporation, when holding in its private or proprietary character property or funds in trust for taxpayers and inhabitants within its limits, occupies toward them a relation like that of a purely private corporation to its *cestui que trust*, who are its share-holders; for in each case the corporation, or its governing body, is a trustee; and if creditors, or share-holders, may maintain an action against the board of directors, the governing body, of a private corporation, to prevent or avoid an illegal and wrongful act, as unquestionably they can do, why may not taxable inhabitants maintain one against a municipal corporation and its governing body, the City Council or Board of Trustees, to *prevent* as well as avoid an act illegal and wrongful, done, or about to be done, in relation to property or funds held in trust?

In High on Injunctions, section 1241, is this language:
" The restrictions thus placed upon equitable interference
with the action of municipal corporations do not extend
to cases where the act sought to be enjoined is in excess
of the corporate power, but are limited to cases of a con-
ceded jurisdiction, within the bounds of which the mu-
nicipal power is acting. And while it is thus shown
equity will not enjoin the action of municipal corporations
while proceeding within limits of their well-defined powers
as fixed by law, it has undoubted jurisdiction to restrain
them from acting in excess of their authority and from
the commission of acts *ultra vires*." Though it is not
quite clear from the language used whether the test of
jurisdiction is meant to apply to acts of municipal corpo-
rations done as well in their public as private character,
it is manifest such restraining power, to be effectual, must
operate upon the General Council of a city or Board of
Trustees of a town; for acts done in excess of authority,
or *ultra vires*, can not be committed by a corporation ex-
cept by its governing body or head. And such must have
been intended to be the meaning and scope of the prop-
osition, for several leading cases in England are cited in
which the power of a court of equity to enjoin passage of
an illegal ordinance is distinctly recognized.

The case of Des Moines Gas Co. v. The City of Des
Moines, 44 Iowa, 505, cited by counsel, was as to the
power of equity to enjoin passage of an ordinance repeal-
ing a former one under which a contract had been made
with the plaintiff. It was held by the court that the
municipal council had in reference to the matter dis-
cretionary power and was acting within the scope of it,
and was neither violating a trust nor doing an irreparable

injury to the plaintiff.   And though it was there said in
general terms that the ordinance in question had the force
of an act of the Legislature and could not be enjoined, it
was still conceded that one creating a public nuisance
might be, because it could not be a rightful subject of
legislation and the mischief therefrom might be irrepar-
able, which was in effect a concession of the power in
every case of like conditions.

In the People, &c., v. Dwyer, 90 N. Y., 402, it was,
upon principle and authority of previous decisions in that
State, held that while equity will not ordinarily interfere
with matters resting largely in the discretion of municipal
authorities, when the threatened action will produce
irreparable injury, and consists in an illegal grant, or the
disposition of property, by devoting it in whole or in part
to the use of a private corporation, or where an illegal
grant is threatened, or the action attempted is corrupt
and fraudulent and an abuse of trust, the court may in-
terfere by injunction to restrain passage of an ordinance
for the purpose.

In our opinion, the general proposition that a court of
equity may not enjoin passage of a municipal ordinance,
must be confined in its application to subjects over which
the corporation in its governmental or public character
has discretionary authority.   And if it be conceded tax-
able inhabitants have a right to resort to equity, at all, to
restrain a municipal corporation and its officers from
making an illegal or wrongful disposition of corporate
property, whereby the plaintiffs will be injuriously affected,
it reasonably follows the power exists to enjoin passage
of the ordinance authorizing the act whenever irreparable
injury will be done to the plaintiffs, and they have no

adequate remedy at law; for, from its nature, a preventive remedy may be applied at the inception of a wrongful act; in fact, when it is about to be done or is threatened.

There may, however, be subjects in relation to which the municipal corporation has discretionary power to legislate, and with which courts of equity upon grounds of expediency and policy will not interfere in the absence of fraud or breach of trust. But this is not such a case; for the plain legal duty is imposed upon the General Council to hold, control and manage the wharf property for use of the public, which can not be evaded by transfer of it or otherwise. Yet, passage of the ordinance in question might have been, if it was not actually intended to be, followed so soon by transfer of the property as to put it out of the power of the plaintiffs and all other parties aggrieved to prevent consummation of the wrongful act.

We think a court of equity has not only the power to restrain passage of an ordinance authorizing an illegal or wrongful disposition of property acquired and held, as is the case of the wharf property, but, if needful, compel the General Council to perform the duty of preserving, protecting and maintaining it for the purpose intended, though, of course, leaving it to the discretion of that body as to the manner of discharging its trust.

It is stated, in the answer, that the ordinance was withdrawn after commencement of the action, and was not before the General Council when the trial was had. But as the plaintiffs had a cause of action, withdrawal of the ordinance did not have effect to defeat their right to the relief sought, especially as another ordinance of the same

character may be hereafter introduced and passed, unless the right to do so be perpetually enjoined.

The judgment dismissing the action, being, as already indicated, erroneous, is reversed and cause remanded for proceedings consistent with this opinion.