ANDREW C. GRAY, Attorney General, at and by the relation of GEORGE S. CAPELLE and SAMUEL BANCROFT, JUNIOR,

*vs.*

THE MAYOR AND COUNCIL OF WILMINGTON, J. HARVEY SPRUANCE, Mayor of the Mayor and Council of Wilmington, JAMES L. BANNING, President, and CHARLES G. DEMPSEY, WALTER RASH, EDWARD A. HIGGINS, JAMES KANE, HENRY C. TAYLOR, DANIEL P. DuROSS, SAMUEL H. BENSON, JUNIOR, NORMAN C. DOWNS, GEORGE L. BILDERBACK, MICHAEL T. CONWAY, JOHN J. McGOVERN and RICHARD C. McMULLIN, members of the Council of the Mayor and Council of Wilmington.

*New Castle, May* 31, 1912.

The Court of Chancery will not restrain the mayor and council of a city from taking further action on a proposed ordinance providing for a sale of land owned by the city, though a recital in the ordinance of the relinquishment of control over the land by the board of water commissioners, which was a jurisdictional fact, be untrue; an injunction being properly withheld until the last practicable moment, when it appears that the mayor and council will take final and illegal action.

INJUNCTION BILL. The bill is by the Attorney General upon the relation of two citizens and taxpayers of the City of Wilmington, alleging that the city owns land bounded by Rodney, Eighth, Clayton and Ninth Streets, containing a reservoir for water, and so a part of the water works of the city, full jurisdiction over and control of which was and is vested in the Board of Water Commissioners. There had been introduced into the Council an ordinance, which had had two readings, and which recited in the preamble that the land had been abandoned as a reservoir and was not necessary to the water supply system, and that "the Board of Water Commissioners of the City of Wilmington had expressed to the Council of the Mayor and Council of Wilmington its opinion that it [the land] is of no further use for that purpose to the City of Wilmington." The ordinance then authorized and directed the sale of the land at public sale.

It was further alleged in the bill that the recitals were untrue in fact, because the land was necessary for the water supply system and in fact contained pipes actually used to supply water, and because the Board of Water Commissioners had never taken any action to show the land was not necessary, or relinquishing control or authority over the land.

The relators alleged that the sale of the land would be unlawful and injurious, and that it was the purpose and intention of the Council to take further action on the ordinance at its next meeting and probably to adopt the same, and upon the adoption of the same and the approval thereof, a speedy sale could easily be made of the land. Irreparable injury to them and other taxables, if further action on the ordinance be permitted and the sale be effected, was also alleged.

Prayers were made to enjoin the members of the Council, naming them individually, from taking any further action upon, or voting on the ordinance, and further prayers to restrain the approval by the Mayor, and the making by the corporation of a sale under the ordinance.

A restraining order was granted on the day when the next meeting of the Council would be held after the ordinance was introduced, and a rule for a preliminary injunc-

tion was awarded. *Ex parte* affidavits were read at the hearing of the rule.

*Robert H. Richards*, for the relators.
*John W. Brady* and *Armon D. Chaytor, Jr.*, for the defendants.

THE CHANCELLOR: Two main questions arose at the hearing: (1) Had the Board of Water Commissioners relinquished its control and authority over the land and determined that it was no longer necessary for the water supply system of the city? (2) If such control and authority had not been relinquished, could or should the Court of Chancery enjoin the Council from passing the ordinance authorizing a sale of the land?

It should be explained that the Council was formerly the legislative, as well as the executive, branch of the municipality; but that since 1883 the full jurisdiction, control and management of the water supply system, and of all the land used for reservoirs and other property for storing and delivering water, was absolutely vested in the Board of Water Commissioners, so that until this Board relinquished control of the land the Council had no power to sell it. There was and could have been no contention to the contrary.

From the affidavits it is clear, beyond question, that at no time had the Board of Water Commissioners relinquished control, or taken any action to that effect, and that there was no basis for any claim that they had taken any official action which justified the conclusion that they considered the land unnecessary, or wanted it sold. It is not true that the Board had expressed to Council the opinion that the land was of no further use to the city, and the statement in the recital that this opinion had been expressed was untrue. It is of no consequence, except, perhaps, as to the question of the imposition of costs, but there is no evidence to show that before the ordinance was introduced any effort was made to obtain from the Board of Water Commissioners their official views as to the need for the land and the desirability of selling it.

But though the recitals in the ordinance were untrue, and

therefore Council had no legal power to sell the land, still, the question remains, should the court enjoin the Council from taking further action on the ordinance?

There is no contention but that the Council had power to authorize the sale of the property, if the control of the Water Department had been in fact relinquished, and this is rather assumed than decided in this case. It was not a case, then, where the Council was seeking to do an act *ultra vires*: e. g., to create a public nuisance, or remove an official over whom it had no control. The deficiency of authority arose from the fact that some other municipal body had not relinquished its superior right of control of the thing over which the Council was seeking to exercise power and which it was seeking to sell pursuant to its general powers. Neither was it contended that the bill was not brought by the proper parties, and in the proper way, and it is assumed that the Attorney General, at the request of the relators as taxpayers of Wilmington, had a right as such to proceed in the manner in which they did. The same course was pursued in the case of *Attorney General v. Mayor & Council of Wilmington*, 4 *Del. Ch.* 575, which proceeding was effective though the court did no more than grant a preliminary order without rendering an opinion.

Again it is clear that the passage of the ordinance would not, of itself, have effected any definite result without further steps being taken to enforce it, or make it effective. Title to the property would not have been changed by the passage of the ordinance, and no rights or authority would have been conferred thereby. It would not have imposed upon any other municipal agents the duty to sell the land, but was an attempt to decide in favor of a sale thereof at some future time at public auction. It is true, also that in attempting to so deal with the property the Council was acting, not in its public, but in its proprietary character, much like the board of directors of any other corporation dealing with corporate property, rather than as a branch of the State government exercising governmental powers for the protection of the life or property of its citizens.

While there is some conflict in the decisions, not so much

as to the principles of law applicable but rather to the application thereof, it seems clear that in such a case as that presented the preventative powers of the Court of Chancery should not be exercised to enjoin the passage of the ordinance.

In the case of *Stevens v. St. Mary's Training School*, 144 *Ill.* 336, 32 *N. E.* 965, 18 *L. R. A.* 832, 36 *Am. St. Rep.* 438, there is a full discussion of the authorities on the subject of judicial power to restrain the exercise of legislative powers, and the conclusion was thus stated there:

"The weight of authority and the tendency of the more recent decisions are in favor of the position, that the restraining power of the courts should be directed against the enforcement, rather than the passage of authorized orders and resolutions or ordinances by municipal corporations."

Without reviewing the authorities, this is considered by this court to be a safe statement of the law on the subject.

There are exceptions to this rule, and the case of *Roberts v. City of Louisville*, 92 *Ky.* 95, 17 *S. W.* 216, 13 *L. R. A.* 844, seems to be one. There the court restrained the adoption by the legislative branch of the city government of an ordinance requiring the Mayor to convey certain lands of the city for an unlawful purpose. This was a case where the mere acting on, or the passage of, the ordinance might create rights and cause an injury to the city. In the case cited, the court noted the dual character of a municipal corporation and held that a court of equity might enjoin the passage of an ordinance affecting the corporation in its private or proprietary character and not those affecting the corporation in its governmental or public capacity. But this distinction has not, it seems, been adopted and does not seem to be sound.

Instead of interfering with a legislative movement to the accomplishment of an illegal purpose at the outset thereof, the court should rather act at the last practicable moment, giving ample time for appeals to be made to the reason and good judgment of the legislators. Here there was a fact to be determined by the Council before it could exercise any control over the land in question, viz: Had the Water Department

relinquished control? The court cannot assume in advance that the members of the Council will ignore the real facts and violate the obligations which they have assumed as legislators by voting to pass the ordinance in the face of the clear evidence against such relinquishment, such as has been presented to the court in this case, and which perhaps might have been presented to the Council. It will be time enough to stretch forth the preventative arm of this court when some attempt is made to enforce such an ordinance in case it be passed by the Council and approved by the Mayor. There are proceedings to be taken, even after the ordinance becomes a law, before the land can be sold and conveyed away. It is a wiser course then not to interfere with the exercise of the legislative discretion, but rather to wait until some effort is made to act upon an invalid ordinance, unless injury is likely to result from the delay. Certainly in this case, even if the court has power to restrain the passage of the ordinance, it should not exercise such power. The composite and conglomerate character of the present charter of the City of Wilmington furnishes an opportunity for discord in the management and control of municipal property, such as that which has caused this litigation. At present there are several independent boards exercising power and performing duties for and on behalf of the City, and the confusion and conflict resulting therefrom is the natural outcome of an unscientific and unsystematic arrangement for administering municipal affairs. A charter should so co-ordinate the various governmental and administrative agencies as to make a conflict of authority and power between them difficult, if not impossible.

The restraining order will be dissolved and the motion for a preliminary injunction denied.

Let an order be entered accordingly.