CASE 102—PETITION ORDINARY—JANUARY 7.

## Tillman v. Otter.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. ELECTION BY GENERAL COUNCIL OF CITY—REFUSAL OF MAJORITY OF BOARD OF ALDERMEN TO GO INTO ELECTION.—Under the charter of the City of Louisville which provides that "The General Council shall, in the month of October in each year, elect a Commissioner of the Sinking Fund to fill the place of the Commissioner whose term of service expires that year," and "in the event the Council fail to elect in that month then the election shall be made by the Commissioners themselves," a majority of the Board of Aldermen can not, by refusing to go into the election in the month of October, deprive the General Council of the right to elect and thus confer upon the Commissioners themselves the right to fill the vacancy. Therefore an election for Commissioner held by the Board of Councilmen and a minority of the Board of Aldermen was valid, a majority of the Board of Aldermen refusing to be present or to take part in the election; and the plaintiff in this case, having at that election received the votes of more than two-thirds of the members of the General Council, is entitled to the office of Commissioner.

2. POWER OF MAYOR TO ADJOURN COUNCIL.—The Mayor has no power to adjourn either the Board of Councilmen or the Board of Aldermen unless there has been a failure to agree on an adjournment, and then it is his duty to adjourn both bodies to a day not beyond the regular time of meeting. Therefore an adjournment for two weeks of the Board of Aldermen, by the Mayor, upon the suggestion of the President of that Board, was a nullity, and left both Boards in session with the right to meet the next day.

3. USURPATION OF OFFICE—BURDEN OF PROOF.—In an action in the name of the Commonwealth alleging the usurpation of an office by one of its citizens, the burden is on the defendant to show by what authority he holds the office; but where the citizen sues to recover an office, the burden is on him to show his right. He can not recover upon the ground that the defendant has no right to the office.

HUMPHREY & DAVIE, T. L. BURNETT, HELM & BRUCE. FOR APPELLANT.

1. As the plaintiff, Otter, is suing for the office, and the defendant, Tillman, is in possession, the burden of proof is on Otter to estab-

Tillman v. Otter.

lish his own title ; and, as he failed to do so, defendant is not called
on to show defendant's title.   (Code, sec. 483 ; Justices v. Har-
court, 4 B. Mon., 501 ; Lehman v. Hinton, 1 Duv., 42 ; Justices
v. Clark, 1 Mon., 86 ; Toney v. Harris, 85 Ky., 464 ; McCune v.
Weller, 11 Cal., 68.)

2. The Act creating the Sinking Fund Commissioners, and the city
ordinance, both provided that three Commissioners should be
elected in " October " by the two Boards of the General Council on
" joint ballot ; " and, by an amendment to the Act, it was provided
that, unless the Council should make such election in October of
each year, it should be treated as a vacancy, and the, remaining
Commissioners should elect them.   (Burnett's City Code, pp.
692, 698, 702.)

3. The City Charter provided that the General Council should meet
every two weeks, and not adjourn for longer than two weeks ; that
no one of the two Boards should adjourn for longer than twenty-
four hours without concurrence of the other ; and that if they
could not agree upon an adjournment, the Mayor should adjourn
them to a day not beyond the regular two weeks ; and the Mayor
could convene them at any time.   (Charter of 1870, secs. 3, 6 and
24.)

4. The provision was, not that the members of the two Boards should
meet together, but that the " two Boards" should meet ; and a
meeting of the " two Boards" in joint session for " joint ballot"
can only be lawfully had by each Board separately voting to
meet the other.   A mere meeting together of the " members" of
both Boards is not a lawful meeting of the two Boards.   (Dillon on
Municipal Corporations, secs. 284, 288, 292 ; Morton v. Jungerman,
11 Ky. Law. Rep., 886 ; Beck v. Hanscom, 29 N. H., 224 ; Kim-
ball v. Marshall, 44 N. H., 465.)

5. The two Boards, on October 24th, failed to agree on an adjourn-
ment ; the Board of Council voting to adjourn until October 28th,
and the Aldermen refusing to concur ; and thereupon the Mayor
adjourned the Board of Aldermen until November 7th.   This
operated to adjourn both Boards until November 7th.

6. The gathering of the twenty-four Councilmen and six of the twelve
Aldermen in the Common Council chamber the next night (Octo-
ber 25th) without the consent of either Board, without any official
call or agreement and without the presidents or clerks of either
Board present ; and the pretended election of a temporary chair-
man and clerk, and the holding of a pretended joint ballot and
the election of Otter, were illegal and a nullity. (Dillon on Munici-
pal Corporations, secs. 284, 288 ; Beck v. Hanscom, 29 N. H., 224.)

7. The Act of 1871, amending the Sinking Fund Act, entitled " An
Act to further increase the resources of the Sinking Fund of
Louisville," and which contained the provisions for electing the

Tillman v. Otter.

members, was not void for a defective title. In order to "increase the resources" of the Sinking Fund it was proper to provide for officers to do the increasing and to manage the increase, and the general subject of the Act is the "Sinking Fund," and that is properly expressed in the title. (Burnett's City Code, pp. 692, 698, 702; Elliott's Charter and Ordinances, p. 781; Citizens' Gas-light Company v. Louisville Gas Co., 81 Ky., 269; McArthur v. Nelson, 81 Ky., 67; Cassel v. Lexington Turnpike Company, 10 Ky. Law Rep., 488; Rogers v. Jacob, 11 Ky. Law Rep., 46; Phillips v. Covington Bridge Company, 2 Metcalfe, 221; Jacob v. L. & N. R. Co., 10 Bush, 271.)

ERNEST MACPHERSON and B. F. BUCKNER for appellee.

1. A Commissioner of the Sinking Fund of the City of Louisville is a public officer. (Moses on Mandamus, p. 150; Shelby v. Alcorn, 72 Am. Dec., 182, and note; Ader v. City of Newport, 9 Ky. Law Rep., 749; Bradford v. Justices, 33 Ga., 332; Acts of 1867, vol. 2, chap. 1887, sec. 10, p. 420.)

2. In lieu of the writs of *scire facias* and *quo warranto*, or of an information in the nature of a *quo warranto*, ordinary actions may be brought to prevent the usurpation of an office or franchise; and the action may be brought by either the Commonwealth or "the person entitled" to the office. (Civil Code, secs. 480, 483, 487.)

Formerly by *quo warranto* the intruder was ejected; by *mandamus* the legal officer was put in his place. The provisions of our Code accomplish by one and the same process the objects contemplated by both these results. They oust the unlawful incumbent and give the rightful claimant the right to which he is entitled. (Prince v. Skillin, 71 Me., 361.)

3. The answer of appellant presented no defense to appellee's petition. His title was not derived from or dependent upon a commission or certificate, or declaration of election, the office being elective. "The title to an elective office is derived from the election." (Attorney-General v. Barstow, 4 Wis., 567; People v. Pease, 30 Barbour, N. Y., 591.) The answer denies an "election," but does not deny the facts alleged in the petition as constituting an election; and the demurrer to the answer was properly sustained. (Boone on Code Pleading, sec. 61.)

4. The answer of appellant was further defective in not showing his own title to the office. Forms have been abolished by the Code, but the substance of the common law rules remains, except where they conflict with the spirit of our statutory regulations upon the subject of pleading and practice. (R. & L. T. P. R. Co. v. Rogers, 7 Bush, 535; Hill v. Barrett, 14 B. Mon., 83; State v. McDaniel, 22 Ohio St., 354; Note to 100 Am. Dec., 270 to 271; People v. Thacher, 55 N. Y., 529; People v. Hall, 80 N. Y., 117; High Ex. Rem., sec. 712; Hoglan v. Carpenter, 4 Bush, 91.)

Tillman v. Otter.

5. As the Board of Councilmen adjourned on October 24, 1889, without naming any time, and the Board of Aldermen did not adjourn at all, both Boards were, by law, in session on the following day, October 25th, 1889, when appellee's first election was held. The action of the Mayor was a nullity. Neither Board requested his interference, and he did not attempt to adjourn both Boards. The conditions authorizing his interposition never arose. (People v. Hatch, 33 Ill., p. 13, argument of Melville W. Fuller.)

6. The rule with respect to legislation that a quorum of both branches of a legislative body must be present in order to enact a valid law can have no just application in the conduct of elections. An election is not a legislative act. (Dillon on Mun. Corp., sec. 284; Whitesides v. People, 26 Wendell, N. Y., 634; Kimball v. Marshall, 44 N. H., 465; *Ex parte* Humphrey, 10 Wendell, N. Y., 612; Beck v. Hanscom, 29 N. H., 213; 9 Foster; First Parish v. Stearns, 21 Pick., Mass., 148; Coles county v. Allison, 23 Ill., 437; Senate Election Cases, 164, 505.)

Had the six Aldermen who refused to go into the election been present their votes could not have changed the result. "It is a canon of election law, that an election is not to be set aside for a mere irregularity or informality, which can not be said in any manner to have affected the result of the election." (Dillon on Mun. Corp., note to section 197.)

AARON KOHN on same side.

JUDGE PRYOR delivered the opinion of the court.

The controversy in this case is over the office of a commissioner of the sinking fund of the City of Louisville. The plaintiff, John J. Otter, who is the appellee in this court, claims to have derived title to the office by an election held by the general council of the city on the 25th of October, 1889, and the defendant, Wm. Tillman, claims his title under an election by the commissioners of the sinking fund on the 12th of November following.

The provision of the Act in relation to the sinking fund authorizing the election reads as follows: "The general council shall, in the month of October in each year, elect a commissioner of the sinking fund to fill the place of the commissioner whose term of service ex-

pires that year. In the event the council fail to elect in that month, then the election shall be made by the commissioners themselves. If a commissioner shall die, resign, or from any other cause there shall be a vacancy in the office of the commissioners of the sinking fund, the same shall be filled by the board of commissioners of the sinking fund at a regular meeting of said board." The mayor and the president of the board of aldermen are *ex officio* members, and three others, to be elected by the general council, one in each year, constitute the board, being five in all. On November 12, 1889, W. R. Ray, president of the board, Charles D. Jacob, mayor, and George W. Griffith, president of the board of aldermen, elected the defendant, Tillman, as his own successor, and ignored the action of the general council electing Otter to that office on the preceding 25th of October.

A question has been raised as to the burden of proof, and, without discussing the sufficiency of the answer, it is sufficient to say that as the plaintiff, Otter, was asserting his title to the office, it was incumbent on him to make out his case, as it is well settled that such a proceeding is like the enforcement of any other private right, when prosecuted by or in the name of the party claiming to have been injured, but when in the name of the Commonwealth, alleging the usurpation of an office by one of its citizens, the burden is on the defendant to show by what authority he holds it. (State v. Harris, 3 Ark., 570; People v. Utica Ins. Co., 15 Johns, 358; Miller v. English, 21 N. J. Law, 317.) In this case Tillman had been in possession of the office and was again chosen by a board empowered upon a certain contingency to make the selection, and the burden was clearly on the plaintiff,

·Otter, to establish title in himself, although Tillman may have had no right to the office; and it also follows that if the power of choosing a commissioner by this board was in violation of the Constitution, a question not necessary to be decided, still the plaintiff must make out his case, .as he has no right to appear for the State and by an action in his own name show that some one is holding an ·office to which he is not entitled, when he (the plaintiff) has no claim to it himself.

Was the plaintiff, Otter, elected by the general council ·on the 25th of October, 1889, is the sole question in this ·case, and if he was, then the judgment below should be .affirmed.    The board of councilmen held a meeting at their chamber in the city hall on the 24th of October, 1889, and a resolution was passed, all the members being present but one, for a joint session at nine o'clock that ·evening for the purpose of electing a sinking fund commissioner.    The board of aldermen, holding a session in the same hall but in a different room, refused to go into the election and rejected the resolution.    A committee of conference was then appointed by the board of councilmen, with a resolution to the effect that an adjournment be had until the 28th of October (the same month), when a joint meeting would be held, and this was rejected by the board of aldermen.    On that same evening the mayor, at the request of the president of the board of aldermen, each one being a commissioner of the sinking fund, adjourned the board of aldermen until the 7th of November, 1889, and if the power to adjourn this board so as to prevent this election was vested in the mayor, then no election could be held by the people or their representatives (the members of the general council) for ·

commissioner, because the statute expressly provides that the council shall elect in the month of October, and if they fail to elect in that month, then the commissioners of the sinking fund shall select the member. The power of the mayor to adjourn this board is claimed to exist by reason of a section of the city charter, providing that " where both boards are in session, one shall not adjourn without the concurrence of the other for a. longer term than twenty-four hours. If they can not agree on an adjournment, the mayor shall adjourn them to a day not beyond the regular time of meeting." The mayor made no attempt to adjourn the board of councilmen, and from the plain reading of the charter had no power to adjourn either body unless there had been a failure to agree on an adjournment; and then it was his duty to adjourn both bodies to a day not beyond the regular time of meeting. The adjournment made by him, at the suggestion of the president of the board of aldermen, was a mere nullity and left both boards in session with the right to meet the next day. Nor will a proper construction of the city charter, or the provisions of the law creating and regulating the sinking fund, vest the mayor with such a power as to deprive the legislative councils of the city from complying with the plain provisions of the statute authorizing this election to be held in the month of October. Those opposing the election were, each and all, violating a plain duty, as they must have known that an adjournment until November, if the mayor had the power to make it, was taking from the representatives of the people of the city the right to select those who were to be the custodians of large sums of money, and confide it to those who were authorized to make the selection only on the contingency

of the members of the city legislature failing to do that which the law required them to do, and in regard to which there could be no mistake.

The board of councilmen met the next day, the 25th of October, and six of the aldermen with them, and eighteen councilmen and six aldermen voting for the plaintiff he was elected commissioner, there being more than two-thirds of the general council voting for him. This court is now asked to declare that election invalid because a majority of the members of the board of aldermen, with its president in the lead, had refused to discharge their duty, and purposely, as their own exhibits filed show, adjourned or attempted to adjourn to a period with a view of preventing an election by the general council and in utter disregard of both public and private interests. They were, however, still in session, with six of the members ready to act with the other board. They did act, and if the absconding members had remained could not have prevented the election of the plaintiff, as more than two-thirds of the members of the joint session and of the entire general council voted for him. It is insisted that this body, the general council acting as the mere agents of the State in the election of men to control as members of the sinking fund vast sums of money, should be regarded in the light of legislative branches of the government with the right of a minority to resort to parliamentary rules in order to violate a statute and prevent an election of those who are to control a corporation entirely distinct from the municipal government which gives to the general council its existence. It is conceded that the councilmen and board of aldermen are distinct, the one from the other, and that in their legislation for

the city the rules governing legislative bodies must ordinarily prevail, but here the general council was made the mere agent of the State to select some one to act for and control the corporation known as the sinking fund. The general council was required to hold an election once in each year, in the month of October, for that purpose, and if they had assembled in that month and elected, by a fair majority vote, a member of the board without any resolution to that effect, this court would have held the election good as against a mere usurper, and in that light the defendant must be regarded under the facts admitted in this case. It is not denied that on the 25th of October, 1889, the plaintiff received eighteen votes from one body and six from the other, making twenty-four votes in all, and to hold that the plaintiff was not elected, under the circumstances, because of the violation of official duty by the majority of the board of aldermen, would be recognizing a rule that no court should be willing to adopt.

The judgment below is affirmed.