THOMAS A. R. NELSON *v.* JOSEPH W. SNEED.

(*Knoxville.* September Term, 1903.)

1. **CONTESTED ELECTION.** Construction of pleadings. Suit to recover office, not to remove usurper. Case in judgment.

The bill in this cause alleged that contestant and contestee were opposing candidates for the office of circuit judge at the regular election held therefor; that on the face of the returns the contestee was elected but in fact the contestant was legally elected; that the returns as made were false and procured by fraud and corrupt practices in certain designated election districts, thereby rendering the election in such districts void and requiring the returns therefrom to be disregarded, and prayed that contestant be declared elected.

*Held*: That the suit was one by contestant, in his own right to contest the election and recover the office—not to annul the election and remove contestee as a usurper. (*Post, pp.* 40-58.)

2. **OFFICE.** A bill to recover, showing election to be void, must be dismissed.

A suit instituted for the sole purpose of recovering the office of circuit judge, where the allegations of the bill, taken as true on demurrer, show that the entire election was absolutely void and that contestant was not legally elected and is not entitled to recover that office, must be dismissed upon demurrer thereto. (*Post, pp.* 40-46.)

3. **ELECTION.** Void to extent sufficient to change result is void in toto.

Where the election is fraudulent and void in nearly half the wards and districts of the county, so that qualified voters in numbers sufficient to have changed the result of the election were deprived of the right to express their preference by ballot, the election held in the other wards and districts is not a fair expression of the legal voters of the county, and the entire election is void. (*Post, pp.* 46-48, 53.)

Nelson v. Sneed.

Cases cited and approved:   Marshall v. Kerns, 2 Swan, 68; Railroad v. Davidson County, 1 Sneed, 639; McCraw v. Harralson, 4 Cold., 41; Barry v. Lauck, 5 Cold., 589; Knox v. Blair, 1 Bart. Elec. Cases, 526; Mann v. Cassidy, 1 Brewster, 11; Knox v. Davis, 63 Ill., 405; Spencer v. Morey, Smith Elec. Cases, 447.

4.  **SAME.** Office defined; contested election defined; rules of pleading and practice.

The right to hold an office, receive and enjoy its emoluments and exercise its functions, is an incorporeal right, and a contested election is a civil suit brought to recover and enforce a civil right in controversy between contestant and contestee, and the rules of pleading and practice in civil actions are applicable to such contests, except where otherwise provided by statute authorizing the proceedings.   (*Post, p.* 48.)

Cases cited and approved: Boring v. Griffith, 1 Heis., 456; Blackburn v. Vick, 2 Heis., 379; State v. McConnell, 3 Lea, 335; Anderson v. Gossett, 9 Lea, 645; Moore v. Sharp, 98 Tenn., 68; Jones v. Glidewell (Ark.), 7 L. R. A., 835.

5.  **PLEADING.** Requisites of pleading are peculiarly applicable to election contests.

It is a general rule of pleading in all actions that the complainant or plaintiff must, in his bill, petition, declaration, or other pleading in which his cause of action is stated, show to the court such a state of facts which under the law applicable thereto, will entitle him to recover the property, office, or other thing sued for, and this rule is peculiarly applicable to election contests.   (*Post, p.* 48.)

6.  **CONTESTED ELECTION.** Right of candidate with certificate of election; pleadings to show otherwise.

The candidate who has received the certificate of election has a *prima facie* title to the office, and, as the contest will more or less embarrass him in the discharge of his official duties in which the public is interested, there is every reason for requiring a contestant to show upon the face of the pleading in

---

---

which his grounds of contest are stated, a clear right to the office for which he sues. (*Post, pp,* 48, 49.)

Cases cited and approved: Boring v. Griffith, 1 Heis., 456; Blackburn v. Vick, 2 Heis., 379; Jones v. Glidewell (Ark.), 7 L. R. A., 835; Brown v. Jefferson, 42 Kan., 605; Tarbox v. Sughrue, 26 Kan., 228.

7. **SAME.** Essential facts to be shown by contestant in his pleadings.

In a contested election proceeding, it must appear from the facts charged that there was both a valid election held and that a majority of the legal voters participating in it, cast their ballots for contestant, for if the bill fails to show either of these essential facts, it is bad upon demurrer and will be dismissed. (*Post, p.* 49.)

8. **SAME.** Suit to recover office distinguished from action to annul election.

A suit to recover an office under an election is essentially different from an action brought to have an election annulled and the party in possession of the office declared not to be elected and a usurper. One is a suit for the recovery of a private right, and the other is to redress a public wrong. The contestant in the first case must charge that there was a valid election and that he was elected, and in the second that the election was absolutely void and that no one was elected. The prayer in one case is that the election be held valid and the office decreed to the contestant, while in the other it is that it be adjudged void and that no one was elected. (*Post, pp.* 49, 50.)

9. **SAME.** Returns not purged upon general charges of fraud.

Election returns cannot be purged of illegal votes upon general charges of fraud and misconduct of the officers of the election, and friends and supporters of the contestee. (*Post, p.* 50.)

Cases cited and approved: Moore v. Sharp, 98 Tenn., 518; Mann v. Cassidy, 1 Brewster, 11.

Nelson v. Sneed.

10.  **SAME.  Contestant bound by his pleading.  Private suit to recover office cannot be converted into public suit to remove incumbent as a usurper.**

A party seeking to contest the result of an election is bound by his pleadings in which, as in any other civil action, he is required to state the case upon which he predicates his right to recover; and a suit brought solely to recover an office upon the ground that the contestant was in fact elected, while incumbent contestee was defeated, cannot be converted, in the absence of essential averments and proper prayer for such relief, into an action to have the incumbent removed as a usurper, upon the theory that neither the contestant nor the contestee were elected because the whole election was void. (*Post, pp.* 50-58.)

11.  **ELECTIONS.  What prevented an election, on how the voters would have voted, is immaterial.**

It is immaterial what prevented a valid election from being held in the precincts attacked, and no inquiry can be made as to how the voters deprived of the elective franchise would have voted.  (*Post, p.* 52.)

12.  **CONTESTED ELECTION.  Jurisdictional provisions of statute must be complied with.**

The provisions of the Code under which contested election cases may be instituted are jurisdictional, and they must be complied with, not only in order to give contestant the right to maintain the action, but to confer jurisdiction upon the court or tribunal specially created to hear and determine it.  (*Post, p.* 57.)

Case cited and approved:  Harmon v. Tyler, 4 Cates, 8, 23, 24.

---

### FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— W. L. WELCKER, Special Chancellor.

WEBB, MCCLUNG & BAKER, H. H. TAYLOR, J. H. WELCKER, H. H. INGERSOLL, and G. W. PICKLE, for Nelson.

HORACE VANDEVENTER, J. W. CALDWELL, SAMUEL G. SHIELDS, TEMPLETON & TEMPLETON, W. S. ROBERTS, and CHARLES T. CATES, JR., for Sneed.

---

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This proceeding is brought by contestant, Thomas A. R. Nelson, under sections 1320-1326, inclusive, of the Code (Shannon's Ed.), against Joseph W. Sneed, to contest his election to the office of circuit judge of Knox county, Tennessee.

The contestant has presented his grounds of contest in the form of a bill in equity—a practice to be commended, as tending to secure a clear and orderly statement of the facts upon which relief is sought.

The chancellor sustained a demurrer to the bill, and the case is before us upon the appeal of the contestant.

The bill and the assignment of errors are voluminous, each containing more than sixty pages of typewritten matter, and we can only state the material charges and statements necessary for the present hearing of the case.

Contestant charges in his bill that he and contestee were opposing candidates for the office of circuit judge of Knox county at the general election held in August,

Nelson v. Sneed.

1902, and that on the face of the returns the contestee, Sneed, had an apparent majority of 1,261 votes, but that in fact he received a fair majority of the votes cast in said election, and was duly elected to said office, and that the returns to the contrary are false, and were effected and procured by fraud and corrupt and illegal methods and practices employed by officers of the election, and other friends, supporters, and agents of the contestee, in the conduct of the election, in the first, third, fifth, sixth, seventh, ninth, and eleventh wards of the city of Knoxville, and the tenth, seventeenth, and eighteenth civil districts of Knox county, which render the election in these wards and districts incurably uncertain and void, and that the returns thereof should be cast out and disregarded; that no election was held in the ninth district and one precinct of the seventeenth district of the county.

The number of votes cast in each ward of the city and civil district of the county for contestant and contestee, respectively, is set out in full, from which it appears that, in the several wards and civil districts which contestant seeks to have rejected and cast out, contestee, Sneed, received 2,300 majority, and that, in the wards and districts not attacked, contestant, Nelson, received over 1,000 majority, and that the entire vote cast in this election was 9,489.

There are general charges of frauds and corrupt practices which apply to all the wards and districts attacked, and special charges applicable to each of them;

but there is no definite statement of the number of illegal votes of any class claimed to have been cast and counted for contestee, or of the legal votes of which contestant was deprived. The only charge approaching a specific statement of the number of legal votes of which contestant claims to have been deprived is that voters residing in each of the wards and districts, largely in excess of the votes which the returns therefrom show that contestant received therein, had made affidavits stating that they had voted for contestant; but the aggregate of the voters making these affidavits falls far short of a number sufficient to change the result of the election, shown by the returns made by the election officers and canvassed by the election commissioners. It is also apparent from the face of the bill that if the returns should be corrected so as to deduct from them all the illegal votes charged to have been counted for contestee, and to give contestant the legal votes of which he claims to have been deprived, contestee would still have a majority and be elected.

Contestant's statement of his grounds of contest in his assignment of errors, so far as is material, is substantially as follows:

"This proceeding is a contest over the office of circuit judge of Knox county, Tennessee, instituted before the chancellor of the division, as provided by statute.

"The contestant, Nelson, and contestee, Sneed, were opposing candidates for said office at the August general election, 1902. On the face of the returns, the con-

testee, Sneed, had an apparent majority of 1,261 votes. The contestant avers that this apparent result is false, and the result of fraud and irregularities in said election, and that he in fact received a majority of the legal votes cast in said election.

"The bill or petition attacks the returns of certain specific wards and districts, to wit, the first, third, fifth, sixth, seventh, ninth, and eleventh wards of the city of Knoxville, and the tenth, seventeenth, and eighteenth civil districts of Knox county.    The other wards and districts of the city and county are not attacked.

"The object of the bill or petition is to cast out, as being utterly infected with fraud and illegalities, the returns of the wards and districts attacked.

"In the wards and districts attacked, the contestee received, on the face of the returns, over 2,300 majority; and hence, when all of said wards are thrown out, and only the votes of the wards and districts counted in which an honest election is admitted to have been held, there would be a majority of over 1,000 in favor of the contestant.

"As indicating the fraudulent character of the votes in said wards and districts, it is averred that in each of them the contestant received largely more votes than were counted or credited to him by the returns, and that, upon a fair and honest count of the legal votes as cast in all the districts of said county, he had a clear majority.

"The contestant charges that many forms of fraud and misconduct were resorted to in said wards and districts, and sets the same out in these words:

"These forms of frauds may be stated, in a general way, as stuffing ballot boxes, padding returns, miscalling names of candidates on the ballots, by officers of election, bribery of voters, voting without poll-tax receipts or having paid poll tax, upon bogus poll-tax receipts, voting ballots that were not furnished by the proper officer, but fraudulently furnished to voters by outsiders, voting by repeaters and persons who did not reside in the ward and district in which they voted, voting by unregistered persons, or by persons holding illegal registration receipts or certificates, entering the names of absent voters on the poll lists and counting them, counting ballots that were illegally marked by the officer or falsely marked by him, counting ballots that were illegally marked by persons other than the officer of election, or for persons who were not disabled by blindness or other physical disability, by fraudulent substitution of ballots, by receiving open ballots and counting same, by intimidation of voters, by failure to furnish sufficient booths for the accommodation of voters; thereby preventing them from casting their ballots, insufficient and unsuitable places for the holding of said election, by the holding of election by judges, clerks, officers, etc., who were not sworn according to law, by permitting votes to be cast by persons who were not registered by duly sworn officers, by the exclusion of voters

Nelson v. Sneed.

and citizens from seeing the voting and count of the ballots after the polls closed, by fraudulently preventing voters favorable to contestant and his associates on the Republican ticket from obtaining poll-tax receipts, and by the rejection of votes that were offered by qualified voters, and by other illegal practices and methods.

"He avers that said illegal and fraudulent methods and practices were adopted for and on behalf of the contestee, and that they inured to his benefit, and operated greatly to the prejudice of the contestant, and that the result of the election was thus illegally and fraudulently changed.

"In addition to this averment, which is sufficiently specific for the purpose of this proceeding, which is not a proceeding to expurgate the returns and eliminate certain ballots, but to throw out, as utterly infected with fraud, the entire returns of wards and districts, the contestant undertook, so far as the same was possible, to set out specifically, under each ward and district, such acts of fraud and illegality as he was able to discover within the short time after this election allowed for filing his statement or petition.

"It is averred that practically all of the safeguards thrown around elections and the ballot box were disregarded by the commissioners of registration in the matter of the registration of voters, and in the appointment of officers and furnishing places for voting on the day of election, as well as by the officers who held the election."

The prayer of contestant's bill is as follows:

"That the contestee, Jos. W. Sneed, be made a party hereto by proper process, and be required to answer this bill fully and truly, but not upon oath; his answer upon oath being expressly waived. He prays that said wards and districts herein specifically attacked be thrown out, and that the result of said election be ascertained, upon the legal votes cast, and that *he be declared elected to said office.* He also prays for general relief."

The demurrer may be considered as a whole. The material question presented is that the bill shows upon its face that the entire election for circuit judge of Knox county was absolutely void, and therefore contestant was not legally elected, and is not entitled to recover that office, and this proceeding, having been instituted for the sole purpose of recovering the office, must be dismissed.

The assertion that the entire election was void is predicated upon the charges of the bill, which are taken as true for the purposes of this hearing, that the elections held in ten of the wards and districts of the city and county, where nearly one-half of the qualified voters of the county reside and voted in this election, were fraudulent and absolutely void, and the returns therefrom must be rejected and cast out in considering and canvassing the vote of the county and ascertaining the general result, and that in this way qualified voters in numbers sufficient to have changed the result of the election were deprived of the right to express their

preference by ballot, and therefore the election held in the other wards and districts is not a fair expression of the legal voters of the county.

We will consider the bill as originally prepared and filed by contestant.

The position taken by contestee is supported by the charges of the bill. This is a proceeding instituted by the contestant, in his own right, to contest the election in question, and recover the office of circuit judge, and the right to receive and enjoy its emoluments and exercise its functions. This is evident from the charges of the bill, and the statement made of them in the assignment of errors. No further purpose is stated in the body or prayer of the bill, and there is nothing in them from which any other object can be inferred.

Defendant charges that he is eligible to the office; that he complied with the requirements of the law to enable him to become a candidate for it; that he was a candidate in the election, was voted for, and legally elected; and he prays that he be so adjudged.

The charges of fraud and illegal practices in relation to the election held in the ten wards and districts attacked by contestant are sufficient, if true, to vitiate it, and require that the polls of these wards and districts be rejected and cast out in computing the result of the election in the county. Paine on Elections, sec. 500.; *Knox* v. *Blair,* 1. Bart. Elec. Cases, 526; *Mann* v. *Cassidy,* 1 Brewst., 11; *Knox* v. *Davis,* 63 Ill., 405; *Spencer*

v. *Morey,* Smith, El. Cas., 447; 10 Am. and Eng. Enc. Law, 766-780.

The right to hold an office, and receive and enjoy its emoluments and exercise its functions, is an incorporeal right, and a contested election is a civil suit brought to recover and enforce a civil right in controversy between contestant and contestee; and the rules of pleading and practice in civil actions are applicable to such contests, except when otherwise provided by the statute authorizing the proceedings. *Boring* v. *Griffith,* 1 Heisk., 456; *Blackburn* v. *Vick,* 2 Heisk, 379; *State* v. *McConnell,* 3 Lea, 335; *Anderson* v. *Gossett,* 9 Lea, 645; *Moore* v. *Sharp,* 98 Tenn., 68, 38 S. W., 411; *Jones* v. *Glidewell* (Ark.), 13 S. W., 723, 7 L. R. A., 835.

It is a general rule of pleading in all actions that the complainant or plaintiff must, in his bill, petition, declaration, or other pleading in which his cause of action is stated, show to the court a state of facts which, under the law applicable thereto, will entitle him to recover the property, office, or other thing sued for. This is elementary law, and upon grounds of sound public policy, it is peculiarly applicable to election contests. The candidate who has received the certificate of election has a *prima facie* title to the office; and, as the contest will more or less embarrass him in the discharge of his official duties, in which the public is interested, there is every reason for requiring a contestant to show upon the face of the pleading in which his grounds of contest are stated a clear right to the office for which he sues.

In the case of *Boring* v. *Griffith,* supra, it is said "that, where an election is contested, the contestant, in presenting his petition or notice of contest, must make out a case for relief in his own favor."

In the case of *Blackburn* v. *Vick,* supra, it is said "that contestant shall file . . . a clear statement of the grounds on which he proposes to contest the election of his opponent, presenting issues of fact or law."

In the case of *Jones* v. *Glidewell,* supra, it is said: "The contestant can recover the office only by the strength of his title, not upon the weakness of his adversary's."

And in 17 Ency. of Pleading and Practice, 482, it is said: "The plaintiff has the burden of showing his title as in other civil actions." Citing *Tillman* v. *Otter,* 93 Ky., 600, 20 S. W., 1036, 29 L. R. A., 110; *Brown* v. *Jeffries,* 42 Kan., 605, 22 Pac., 578; *Tarbox* v. *Sughrue,* 36 Kan., 228, 12 Pac., 935.

Therefore, in order to maintain this proceeding to contest this election, the contestant must charge and allege in his bill or statement of grounds of contest facts which show that the election held for circuit judge for Knox county in August, 1902, was valid, and that at such election he received a majority of the ballots cast by the qualified voters for this office. It must appear from the facts charged that there was both a valid election held, and that a majority of the legal voters participating in it cast their ballots for contestant. If the

112 Tenn—4

bill fails to show either of these essential facts, it is bad upon dumurrer, and will be dismissed.

The point made by the demurrer is that, upon the facts stated in the bill, the election was absolutely void. Before proceeding to dispose of this question, it is pertinent to call attention to the nature of the attack upon the election held in the wards and districts where the returns showed that contestee received majorities. There is no effort to have the polls in these precincts purged of the illegal votes alleged to have been cast therein, or have them corrected in any way so as to show what is claimed to have been the just result of the election in them. The bill is not framed for such relief, and contains no prayer for it.

Election returns cannot be purged of illegal votes upon general charges of fraud and misconduct of the officers of the election, and friends and supporters of the contestee. *Moore* v. *Sharp,* 98 Tenn., 518, 41 S. W., 587; *Mann* v. *Cassidy,* 1 Brewst., 11; Ency. Pl. and Pr., 384; 10 Am. and Eng. Ency. of Law, 692.

The charge in the bill is that the election in the wards and districts attacked is, on account of the frauds and violations of the election laws committed in them, incurably uncertain and absolutely void; and should be rejected as a whole, and the result of the election in the county ascertained from a canvass of the other wards and districts.

In his assignment of errors, the contestant says:

"This is not a proceeding to expurgate the returns

Nelson v. Sneed.

and eliminate certain ballots, but to throw out, as utterly infected with fraud, the entire returns of wards and districts.

"The fundamental error of the special chancellor was in treating this proceeding as one to expurgate the returns by elimination of votes of the several wards and districts complained of, while it is, in fact, a proceeding attacking as utterly false and fraudulent the entire poll of these several wards and districts. . . .

"As already stated, it is wholly aside from the theory and purpose of this petition to purge the returns of any ward or wards, or any district or districts. On the contrary, the petition disclaims any purpose to do so; averring that there was an honest election held in nearly all of the districts of the county, and in several wards of the city. It assails as fraudulent and absolutely void the returns from most of the wards of the city, and a few of the civil districts, and insists upon having these wards and districts thus assailed wholly cast out."

Thus it appears that the contestant brings this suit and claims the office upon the theory that the election in the wards and districts where he received majorities, which are the second, fourth, eighth, and eleventh wards of the city of Knoxville, and the first, second, third, fourth, fifth, sixth, seventh, eighth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, nineteenth, twentieth, twenty-first, twenty-second, and twenty-third civil districts of the county, was valid, and the returns therefrom correct, while, in those wards and dis-

tricts where the contestee received majorities, it was fraudulent and absolutely void, and, when excluded from the canvass for these reasons, he would have a majority of all the votes which were legally cast in the county, and be elected and entitled to the office.

Can this contention be sustained? We think not. Upon the averments of the bill taken as true by the demurrer, there was no election, or, what is the same in effect, no valid election, in ten of the voting precincts of the county; and nearly one-half of the qualified voters of the county whose ballots, if counted, would have changed the results otherwise arrived at, having thus been deprived of the right to vote, there was no valid lection, and the contestant was not elected, and is not entitled to the office for which he was a candidate, and cannot maintain this action to recover it.

It is immaterial what prevented a valid election from being held in the precincts attacked, and no inquiry can be made as to how the voters deprived of the elective franchise would have voted. The election must be of and for the whole county. One-half of the county cannot in this way choose an officer for the other part, when there are qualified voters in that part who have been deprived of their votes, sufficient to have elected another to the office in question.

The returns set out in the bill show that in the ten wards and civil districts attacked there were cast 4,404 votes (contestant, Nelson, receiving 1,096 votes, and contestee, Sneed, 3,308), and that in the several wards and

districts not attacked there were cast 5,085 votes (contestant, Nelson, receiving 3,018, and contestee, Sneed, 2,067).

It is thus clear that, had contestee received all or even one-half of the votes cast in the wards and districts where it is charged that no valid election was held, he would have been elected.

It is well settled that where there has been a failure to hold a valid election in precincts in which a sufficient number of legal voters reside and have the right to vote, to have changed the result in the county or political division for which the election was held from that shown by the returns from the other districts, the election is void, as it is not an expression of the will of the legal and qualified voters of the entire county or division, had they had an opportunity to record it in the proper manner.

In the case of *Marshall* v. *Kerns*, 2 Swan, 68, it was held, as interpreted in the case of *L. & N. R. R. Co.* v. *County Court*, 1 Sneed, 639, 62 Am. Dec., 424, that the failure to hold an election in one civil district of a county in an election for the office of circuit court clerk, where there were enough of legal voters in the district to have changed the result of the election in other districts, vitiated the entire election. It is there said: "The people of an important division of the county being thus deprived of their privilege of voting, the officer's return is no reliable evidence that the person returned and elected was the choice of the people of the

county. If the election had been held in this omitted district, the result might have been different. To hold the election valid would be of dangerous tendency, for, if one district may be omitted, more than one may be omitted, and the election be placed very much in the power of the officer.

"We do not think the motive of the officer material to the question. The injury to the public is the same, whether the omitted duty be the result of corrupt motive or mere negligence. In either case the public has been deprived of an important and highly valued right.

"We rest the case simply upon the ground that the election was not legally held, because not held in all the civil districts of the county. The people of the county are the appointing power, and the power not being legally exercised—not fully exercised—the plaintiff is not in fact or legal effect, appointed to the office."

The election in the case of *Marshall* v. *Kerns* was declared void because it was impossible to know whether the successful candidate would have been elected upon a fair consideration or choice of all who desired and were entitled to vote in the election. It appeared that voters enough were deprived of the right to vote to have changed the result.

In the case of *McCraw* v. *Harralson,* 4 Cold., 41—a contest over the office of tax collector for Obion county— where there was a failure to hold an election in one precinct, it was held:

"If it appeared that enough of voters who would have

cast their votes one way or the other had been deprived of the right to do so, if the failure to hold an election had changed the result, it would vitiate the election. But the mere fact of a failure to hold such an·election, without the probable effect to change the result appearing would not be fatal."

In the case of *Barry* v. *Lauck,* 5 Cold., 589, brought for the sole purpose of testing the validity of a special election in the seventh chancery division of the State, at which Lauck claimed to have been elected to the office of chancellor of said division, it appeared that no notice was given for holding the election in Macon county— one of the counties of the division—and that no election was held at the polling places in many civil districts in other counties of the chancery division, and that there were registered voters in these districts, in which, if all had cast their votes for Barry, the unsuccessful candidate in said election, it would have changed the result shown by the returns; and it was held that the entire election was void, and vested in Lauck no title to the office, although he received a majority of the votes in the precincts where valid elections were held, upon the authority of the cases of *Marshall* v. *Kerns, L. & N. R. R. Co.* v. *County Court,* and *McCraw* v. *Harralson,* above cited.

The contestant has therefore failed in his bill to show that he was duly elected and has title to the office he claims, and there can be no recovery in his favor.

It is, however, now insisted in argument that contes-

tant has the right, as a citizen of Knox county, without showing any title to the office in question, to maintain this contest, in the interest of the public, for the purpose of having the contestee excluded from office to which it is claimed he was not elected.

This suit is not brought by contestant as a citizen, but in his private right as a candidate, to recover the office in question, and the relief must be confined to the case presented by his bill.

It is entirely different from an action brought to have an election declared void, and the party in possession of the office declared not to be elected and a usurper. One is a suit for the recovery of a private right, and the other to redress a public wrong. The contestant in the first case must charge that there was a valid election and that he was elected, and in the second that the election was absolutely void and no one was elected. The prayer in one case is that the election be held valid and the office decreed to the contestant, while in the other it is that it be adjudged void and that no one was elected.

The bill contains no charge, in terms, that the election was void. It charges that there was a valid election and that contestant was elected, and the prayer is that the office be decreed to him. These charges and prayer are directly antagonistic to the character of relief now for the first time asked in the supplemental brief filed for contestant.

We see no reason why the well-established and familiar rule that parties must state the case upon which they

predicate their right to recover in their pleadings, and conclude with a prayer for appropriate relief, should not apply to this case, especially when contestant, in his statement of his grounds of contest, has adopted the form of a bill in equity, and the chancellor has ordered that the rules of chancery practice shall govern these proceedings.

To sustain this suit for the purpose of having the election held August 7, 1902, for the election of a circuit judge for Knox county, declared void, and the contestee a usurper, would be to give the bill force and effect directly in conflict with the avowed objects and purposes for which it was filed, and to grant relief directly the reverse and absolutely antagonistic to that which is specifically prayed, and which the rules of every system of pleading and practice known to us forbid.

The effort upon the part of contestant to obtain this relief is clearly an afterthought, resolved upon after the hearing of the case begun in this court, as fully appears from the assignment of errors.

Furthermore, as we have held at the present term in the case of *Dana Harmon* v. *Alonzo J. Tyler*, 4 Cates, 8, 23, 24, 83 S. W.,—, the provisions of the Code, under which this proceeding was instituted are jurisdictional, and they must be complied with, not only in order to give contestant the right to maintain the action, but to confer jurisdiction upon the court especially created to hear and determine it.

If contestant desired to bring this suit for the purpose

of having this election declared void absolutely, and to oust the contestee from the office of circuit judge, he should have done so within twenty days after the election—the limit prescribed by statute—making proper allegations and praying for appropriate relief.

The time within which such a proceeding could be instituted has elapsed, and a suit brought for a different purpose, making charges and praying relief in conflict with a proceeding for that purpose, cannot now, by construction or amendment, be converted into such an action.

The public is not without a remedy when offices are usurped by those who have not been lawfully elected to them, but proceedings in its interest must be commenced at the proper time and in the proper manner, like any other action. The courts cannot institute such actions, their only power and province being to try and determine those instituted and prosecuted by others; nor can they convert a private action into a public one, or an action brought solely for the purpose of recovering and enforcing a private right into one to punish a public wrong.

There is no error in the decree of the chancellor dismissing the bill, and it is affirmed, with costs.