# STATE v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

### June 30, 1911.

### Nos. 17,125—(10).

**Carrier — free storage of goods shipped.**

It is within the corporate powers of a common carrier to agree, as an inducement in securing business, that merchandise shipped over its roads shall be stored at terminal points in this state free of charge for the period of ninety days, subject to stipulated charges thereafter until removed; it appearing that the concession of free storage and the subsequent charges were in accordance with duly published tariff regulations and open without discrimination to all shippers, limited only by the facilities for storage.

Action in the district court for Ramsey county to adjudge defendant guilty of usurping the franchise and business of a public warehouseman and to enjoin it from conducting such business. The complaint alleged that notwithstanding the limitations imposed upon defendant by its charter and the laws of the state, it had for more than a year been daily and continuously soliciting and receiving goods, wares and merchandise for storage in its freight houses within the state, and in buildings leased for that purpose, for hire and reward, and that it had been carrying on the independent business of a public warehouseman on a very large and extensive scale. The material part of the answer is quoted in the opinion. The reply denied the allegation of the answer that defendant had never maintained a public warehouse or warehouses. The case was tried before Orr, J., who made findings and as conclusion of law ordered judgment in favor of defendant. From the judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*George T. Simpson,* Attorney General, *Lyndon A. Smith,* Assistant Attorney General, and *Cobb & Wheelwright,* for the State.

*M. L. Countryman,* for respondent.

[1] Reported in 131 N. W. 1075.

Lewis, J.

Action to enjoin the defendant from exercising the business of a public warehouseman. So far as necessary here to consider the answer alleged:

"Third. That this defendant has never, at St. Paul, Minneapolis, or at any other station on its line of road, received grain for storage in bulk from different owners and mixed the same together, or so stored it that the identity of the different lots or parcels was not preserved, and that at no time has this defendant owned or controlled elevators or warehouses in which grain has been received, stored, shipped, or handled, and this defendant has never maintained a public warehouse or warehouses, or performed the functions of a public warehouseman, and does not contemplate doing so in the future.

"Fourth. That at the present time, and at all times mentioned in plaintiff's complaint, it is and has been necessary for this defendant to temporarily store in its freight rooms freight received for transportation, freight having been transported to place of destination, freight while in transit, and freight awaiting payment of freight charges and removal of such freight from defendant's freight houses by the consignees thereof, and this defendant has made such storage when necessary, and none other; that such storage is and has been inseparable from and a mere incident to the carriage of such freight."

At the trial the custom and usage in furnishing storage facilities by common carriers, as recognized in the Interstate Commerce Commission Reports, was given in evidence, and an officer of the Security Warehouse Company of Minneapolis testified that the practice of granting ninety days' free storage by defendant had the effect of diverting customers and injured the company's business. This, with the tariffs and regulations included in the findings, constituted the evidence in the case.

The trial court found that:

"1. The defendant is a railroad corporation created, organized, and existing under and by virtue of the laws of the state of Minnesota. At all the times hereinafter mentioned it has been, and now is, a common carrier engaged in the transportation of merchandise

and passengers for hire; its general offices and principal place of business being in the city of Minneapolis, Hennepin county, in said state, and its lines of railroad.extending from Minneapolis westerly to and beyond Watertown in South Dakota, and in a southerly and southwesterly direction to points in the state of Iowa. It is engaged in both an interstate and intrastate business. It has no charter or other authority to engage in the warehouse business, except such as may have been conferred upon it by the general laws of Minnesota as incidental to the transportation of freight.

"2. At the time of the commencement of this action and for several months prior thereto, the defendant published and had in effect a certain tariff, known as 'M. & St. L. G. F. O. 100—A,' and supplements thereto, which tariff and supplements set forth the rates charged by the defendant for the service rendered by it in transportation of freight over its line of railroad. Said tariffs and supplements are on file in the office of the Railroad and Warehouse Commission of said state, and correctly state the rates for transportation charged and collected by the defendant for its service rendered as a common carrier of merchandise. Said tariff contained the following provisions:

" '(2) The Minneapolis & St. Louis Railroad, on application made prior to arrival of carload freight and to the extent of its available storage facilities, will allow free storage in its freight houses at Minneapolis and St. Paul, Minnesota, for 90 days from the time the car is unloaded.

" 'On expiration of the 90 days this freight will be subject to storage charges of 5 cents per ton or fraction thereof, per day or fraction thereof, with maximum charge of 40 cents per ton per calendar month, subject to following handling charges and risks:

" 'Sugar, salt, grain products, or cement in sacks or barrels, 15 cents per ton or fraction thereof.

" 'All other carload freight, 25 cents per ton or fraction thereof.

" 'No freight will be accepted for storage except at consignees' or owners' risk of fire or storm loss, or loss or damage from any other cause whatsoever.

" 'No charge will be made for storage of less than carload freight.

" '(At all other stations under jurisdiction of Northern Demur-rage Bureau).

" 'Storage in transit (except shingles).

" '(b) The Minneapolis & St. Louis Railroad and Iowa Central Railway will, to the extent of their available storage space, allow free storage of carload shipments in transit (except at St. Paul and Minneapolis, Minn. See section 'a') on the basis of through rates from point of origin to destination. Their facilities being limited, arrangements for storage must be made prior to shipping of freight. Owners of freight are required to insure against fire loss while held for reconsignment. No charge will be made for storage of less than carload freight.

" 'Shingles.

" '(c) Shingles delivered this company at St. Paul, Minneapolis, or Minnesota Transfer, Minn., when originating west of the Dakota-Montana state line, may be stopped without extra charge for stor-age or sorting in transit at Ia. Cent. Ry. and M. & St. L. R. R. sta-tions on basis of through rate from original point of shipment to final destination, providing the storage facilities and the labor in-cident to sorting, loading, and unloading are furnished by the owner.

" 'When storage facilities are furnished, and the loading and un-loading is performed by the Ia. Cent. Ry. and M. & St. L. R. R., the following charges will be made:

" 'Two cents per one thousand shingles, but not less than $5.00 per car for first thirty days of storage or fraction thereof.

" 'One cent per thousand shingles for each subsequent thirty days' storage or fraction thereof.' "

"3. The above tariff was continued in effect until October 1, 1909, when the provision therein for free storage was superseded by a supplementary tariff designated as 'Supplement No. 33,' effective on said last-named date, which supplement was as follows:

" 'Effective October 1, 1909, Supplement No. 33.

" '(a) The charge for storage of less than carload freight, not re-moved from railroad warehouses or platforms within forty-eight

hours from the first 7 a. m. after notice, will be 5 cents per ton per day, or, at option of railroads, freight may be sent to public warehouse, subject to risk of owner of freight.

" 'Any fractional part of 2000 pounds will be computed as one ton, and any fractional part of twenty-four hours will be computed as one day.

" 'Exception—Fruit, carloads, handled for auction through railroad freight houses, will be charged at the rate of 25c. per ton or fraction thereof with time limit twenty-four hours.' "

"4. During all the time the tariff set forth in the second paragraph of these findings of fact was in effect, the defendant continuously transacted its business in conformity therewith, and furnished to its patrons the free storage therein provided for, and rendered the usual service in handling, loading, and unloading at the rates specified in said tariff. The storage and handling facilities so supplied included storage and handling in buildings owned by third parties, such facilities being furnished under arrangements made between the defendant and the owners of such buildings.

"5. No increase was made over the defendant's regular rates for transporting merchandise over its railroad for or on account of the free storage advertised by and furnished pursuant to the provisions of the tariff set out in the second paragraph of these findings of fact. Such storage was furnished without any consideration in excess of the regular tariff rate for transporting the property stored and rendering the service incident to the performance of the defendant's duties as a common carrier in the usual manner. Such free storage facilities were supplied by the defendant, as stated in such tariff, to all its patrons having occasion for such facilities, and were offered at various and numerous points within and without the state of Minnesota, as an inducement to parties to make shipments over defendant's railroad.

"6. The several other railroad carriers having terminals and terminal facilities at the cities of St. Paul and Minneapolis also installed and made effective tariffs containing provisions for free storage of merchandise transported over their lines, similar to the pro-

visions of the tariff installed and made effective by this defendant, as hereinbefore set forth.

"7. At all times herein referred to a large number of storage warehouses have been and now are maintained by citizens of this state, and by companies organized by citizens of this state, at the cities of Minneapolis and St. Paul and at Minnesota Transfer, the erection and maintenance of which represent large investment and expense. Such warehouses were constructed and are maintained for the purpose of supplying storage facilities for hire to any and all persons, corporations, copartnerships, individuals, or business associations having use for such facilities. The goods stored therein include all kinds and classes of goods, wares, merchandise, and personal property, except grain.

"8. The installation of the tariffs referred to in paragraphs 2 and 6 of these findings and the furnishing of free storage thereunder by said various carriers, including the defendant, deprived the Security Warehouse Company, one of the owners of the warehouses described in paragraph 7 hereof of a large part of the storage business which it otherwise would have secured, and directly and seriously diminished the revenues which it had been formerly receiving from the operation and conduct of its warehouse.

"9. This action was commenced in the month of February, 1909, and similar actions are pending against each of the carriers referred to in the defendant's answer herein, except that since the commencement of this action the action against the Wisconsin Central Railway Company has been dismissed because of its absorption by the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. Since the commencement of this action the defendant, and all the other railroad companies mentioned herein, have canceled and withdrawn the said tariff provisions hereinbefore set out relating to free storage, and that neither the defendant nor any one of said carriers has since such withdrawal been, or now is, engaged in the practices complained of in the complaint herein.

"10. The memorandum made and filed by the undersigned on August 26, 1910, is based upon the facts herein found."

As conclusions of law the court finds that the defendant is entitled to the judgment and decree of this court that plaintiff take nothing herein.

The trial court decided that the state was not entitled to an injunction, but placed its decision on the ground that at the time of the trial it appeared that the tariffs had been withdrawn, and that it would be a useless ceremony to restrain the defendant from doing that which it had abandoned and did not threaten to resume. The state insists that it was entitled to a decision on the merits, and invokes the rule that, when the plaintiff is entitled to an injunction at the time of the commencement of the action, it will be granted, even though the defendant may have discontinued the acts complained of. The questions presented were of public importance, and the state was not satisfied that the same tariffs might not be reinstated in the future. Under the circumstances the case should have been disposed of on the merits. High, Injunctions (4th Ed.) § 23; Roberts v. City, 92 Ky. 95, 17 S. W. 216, 13 L.R.A. 844.

A warehouseman is one who receives into his warehouse goods and merchandise for storage for hire. The complaint charges that defendant was engaged in conducting and carrying on for hire and reward the distinct, substantive, and independent business of a public warehouseman, and the legal basis for the action is that the conduct of such business is ultra vires. Defendant admits that it has no corporate power to receive and store goods as an independent business, but insists that such storage as it has furnished was incidental to its business of transporting freight as a common carrier. There is no evidence in the record that defendant held itself out to the public generally as a warehouseman and the nature of its business must be determined from the regulations and tariffs as set forth in the findings. From these regulations it appears distinctly that they were published and enforced solely for the benefit of shippers on the road, and no discrimination was made between shippers. Free storage at St. Paul and Minneapolis was offered to the extent of available storage facilities. On the expiration of ninety days the freight was subject to certain charges. Shippers were informed that the facilities for storage were limited and that arrangements for storage

must be made prior to shipping. So far as appears from the regulations, the time of storage was not limited. No extra charge was made for transporting freight shipped subject to these regulations.

It is stated in the state's brief that the free storage was offered to all the defendant's patrons as an inducement for making shipment over its road, and the state concedes that such storage was furnished without any consideration in excess of the regular tariff rate for transportation of the property. It is contended that the arrangement amounted to the granting of a bonus for the purpose of increasing the revenues in the transportation of the freight, which had the effect of unjust competition with regular warehousemen at St. Paul and Minneapolis; but the state concedes that the manner in which the practice may affect other warehousemen is not involved and the only question for decision is frankly stated thus: "The primary obligations of a carrier are to receive, transport and deliver property. It can only be forced into the position of a warehouseman through lack of diligence on the part of the consignee in the removal of his property." And the claim is made that the carrier is compelled to rid itself as quickly as possible from all freight received at terminals.

If this proposition is sound, then it might follow that defendant has been conducting an independent substantive storage business. But we do not consider the position well taken, and we find no warrant for it in the law. In State v. Southern Pacific, 52 La. An. 1822, 28 South, 372, the leading case cited by appellant, the company had followed the practice of taking goods into its warehouse which were not received for or by shipment. It was conducting a public warehouse in the same manner that any party not a common carrier would conduct it. The general statements found in the opinion as to enforced storage do not seem to have been called for by the facts nor necessary to the decision.

The case of American Warehousemen's Assn. v. Illinois Central R. Co. 7 Interst. Com. R. 556, involved the question of discrimination between shippers and also complaints that some carriers failed to publish all rate schedules and terminal regulations and failed to adhere to rules that were published. The only result of the action

was that it was made the basis for general orders on the subject, and the question now before us was not involved.

Commercial Club of Duluth v. Northern Pacific Ry. Co. 13 Interst. Com. R. 288, raised the question of discrimination as between local and inland jobbers by the practice of storing freight in transit at Duluth. We find nothing in the decision to aid the state's case. On the contrary, the practice of granting free storage was recognized as lawful. It was said: "It is, of course, obvious that the privilege is more valuable to inland merchants than it is to merchants at lake ports. It does not necessarily follow from this, however, that the privilege is unlawful." The other cases are not in point.

The Interstate Commerce Commission and the courts have been frequently required to pass upon the right of common carriers to charge demurrage when freight was not removed by the consignee within a reasonable time after its arrival at the point of delivery, and upon the right to discriminate between shippers with reference to storage rates or privileges; but we have no knowledge of any case where a carrier was charged with violating its charter, by granting storage privileges beyond the time reasonably necessary for removal at the point of delivery. That the carriers engage in the practice from the necessities of competition and for the purpose of securing shippers stands without question. There is no other object. They do not wish to undertake the expense and responsibility of conducting public warehouses, and there is every reason to believe that they would gladly abandon the practice if all carriers would abandon it. The granting of such privileges as an inducement to shippers has always been practised, and we are not aware that the right to do so has ever been questioned.

Not only that, but our own laws recognize the custom as one of the incidents necessary to the transportation of goods, and the limitation suggested by the term "enforced storage" has never been applied. Section 2007, R. L. 1905, treats the storing of property by common carriers as an incident to its transportation, and provides that charges shall be equal and reasonable; but the time of storage is not limited. Section 2805 enables common carriers to get rid of

property consigned to them after sixty days by turning it over to any warehouseman upon payment of storage. This is for the benefit of the carriers, but is not a limitation on their right to hold it longer.

Moreover, the right to hold goods in storage for future delivery was recognized as within the carrier's charter powers in State v. Chicago, M. & St. P. Ry. Co. 68 Minn. 381, 71 N. W. 400, 38 L.R.A. 672, 64 Am. St. 482. The legislature of 1895 (Laws 1895, p. 322, c. 149, § 11) undertook to compel common carriers to turn over to storage companies all property which the consignee failed to call for or receive within twenty days after notice of its arrival. The requirement was held to be an unwarranted and arbitrary interference with the right of parties to contract with reference to the disposition of their property, and upon that ground unconstitutional. The power of the legislature to adopt reasonable regulations for the preservation and protection of property transported, but not claimed within a reasonable time by the consignee, was conceded in the opinion; but no questions of that character are here involved.

Our conclusion is that, on the undisputed facts, the practice of granting free storage on goods received at St. Paul and Minneapolis, for the period of ninety days, subject to the stated charges thereafter until removed, as an inducement or accommodation to shippers, is within the charter powers of defendant incidental to its business as a common carrier.

Affirmed.