CONSOLIDATED COAL & COKE CO. v. BEALE et al.

(District Court, S. D. Ohio, E. D. July 19, 1922.)

No. 219.

1. **Injunction ⬅⊃215—Owner not entitled to have property guarded in anticipation of violation of injunction.**

    Where an injunction had been granted against interference by members of a labor union, the court will not order deputy marshals to guard the company's property in anticipation of future threatened violations of the injunction.

2. **Injunction ⬅⊃1—"Injunction" defined.**

    An "injunction" is a judicial order or mandate requiring a party to do or refrain from doing a particular thing. It acts in personam, and not in rem, and does not operate to bring the threatened property into court. The one who threatens injury is ordered to desist, on the penalties prescribed for the punishment of contempt.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Injunction.]

3. **Insurrection and sedition ⬅⊃5—Court will not issue certificate to President of United States that insurrection exists.**

    A court will not issue a certificate to the President of the United States that a state of insurrection exists, within Rev. St. § 5299 (Comp. St. § 10141), requiring the President to employ military forces to suppress insurrection, as the question whether such an insurrection exists is left solely to the determination of the President.

In Equity. Suit by the Consolidated Coal & Coke Company, a corporation, against Fred Beale, as an individual and as president of Lost Run Union, No. 586, United Mine Workers of America, and others. On application for an order directing the marshal to guard plaintiff's property and a certificate to the President of the United States that a state of insurrection exists. Application denied.

Vorys, Sater, Seymour & Pease, and Barton Griffith, all of Columbus, Ohio, for plaintiff.

F. S. Monnett, of Columbus, Ohio, and John D. Gardner, of Steubenville, Ohio, for defendants.

PECK, District Judge. The plaintiff, having heretofore been allowed a temporary injunction against interference by the defendants with its removal of a great pile of slack accumulated on certain premises which it owns in the mining district of Perry county, Ohio, now presents that by reason of the threats and hostile attitude of the strike sympathizers and inhabitants generally of the locality it would be extremely dangerous, if not impossible, for it to ship the fuel aforesaid without incurring loss of life or bloodshed among its employees, and so makes application to this court for an order directing the marshal to police the location, and the railroad leading thereto, with a sufficient force of deputies to prevent violation of the injunction and enable it peaceably to load and haul away its slack, or, in the alternative, for a certificate to the President of the United States that a

state of insurrection, within the purview of section 5299 of the Revised Statutes (Comp. St. § 10141), exists in the county, which the state and local officials cannot or do not control, and which obstructs the orderly process of law and administration of justice, and requires the presence of federal troops. It is stated that at least three or four companies of soldiers would be necessary.

[1] 1. As to the request for deputy marshals to guard the works: This is not an application for an injunction, nor for the punishment of persons charged to be guilty of contempt of court by violating an injunction, but for the policing of a district in anticipation of future violations now threatened. The primary question involved is whether the guarding of an industry under such circumstances is the function of a court of equity. Neither specific statutes nor the general statutory equity jurisdiction, as interpreted by the familiar usages of equity, confers any such power upon this court. The text-books recognize no such right. No reported case affirms its existence. Deputy marshals were ordered to guard mining property during a strike, but subsequently withdrawn, by the District Court in the Coronado Case, 258 U. S. ——, 42 Sup. Ct. 570, 66 L. Ed. ——, recently decided on error by the Supreme Court. The point was not there under review; it is merely mentioned in the recital of facts, and it does not clearly appear whether the properties guarded by the order of the District Court in that case were then involved in the receivership proceeding, and so within the custody of the court or not. Nor does it appear why the guards were withdrawn. The incidental mention of the matter cannot be regarded as affording a precedent.

[2] An injunction is a judicial order or mandate requiring a party to do or refrain from doing a particular thing. It acts in personam and not in rem, and does not operate to bring the threatened property into court. The one who threatens injury is ordered to desist, on the penalties prescribed for the punishment of contempt. Should any of the defendants be shown to have violated the injunction, they will, of course, be amenable to such penalties, and it goes without saying that the court will employ all the power at its command to enforce the punishment of any who violate the order. The court, however, is now asked to undertake the custody and guarding of the property in advance of such contempt. To do so would be to go beyond any well-recognized or established jurisdiction, and to undertake a function not devolving upon the court by statute or the usages of equity, but upon the executive branch of the government.

[3] 2. It is provided by section 5299, in effect, that when insurrection in any state hinders the execution of law, so as to deprive any part of the people thereof of their constitutional rights, and the constituted authorities of such state are unable or fail to protect them, such facts shall be deemed a denial by such state of the equal protection of the laws, to which they are entitled under the Constitution of the United States, and in such cases, or when such insurrection obstructs the execution of the laws of the United States, or impedes the administration of justice thereunder—

"it shall be lawful for the President, and it shall be his duty, to take such measures, by the employment of the militia or the land and naval forces of the United States, or of either, or by other means, as he may deem necessary, for the suppression of such insurrection, domestic violence, or combinations."

In Martin v. Mott, 12 Wheat. 19, 6 L. Ed. 537, the Supreme Court of the United States determined that the authority to decide whether the exigencies contemplated in the Constitution of the United States and the act of Congress of 1795 (1 Stat. 424), in which the President has authority to call forth the militia to execute the laws of the United States, suppress insurrections, and repel invasions that have arisen, is exclusively vested in the President. The court, speaking by Mr. Justice Story, said:

"The power thus confided by Congress to the President is doubtless of a very high and delicate nature."

And again:

"Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction that the statute constitutes him the sole and exclusive judge of the existence of those facts."

Therefore it is thought that this court should not undertake to make in advance a decision of that which is solely for the determination of the President of the United States; that is to say, the necessity of using troops in a state in any given emergency. Orderly administration of the affairs of the government is never more important than in difficult times. In such orderly administration the function which this court is now asked to exercise belongs exclusively to the executive, and not to the judicial, branch of the government.

The statement by the District Judge to the President that a state of insurrection existed, making the presence of federal troops necessary, at the time of the Chicago riots in 1884, is cited as a matter of history by plaintiff for a precedent. That statement was personal, rather than judicial. There the matter was already under consideration by the executive branch of the government, and the opinion of the judge, in connection with that of the marshal and the district attorney, as to the exigencies of the occasion, was requested by the Attorney General, who, it may be assumed, was speaking for the President. In other words, the Chief Executive asked of the judge his testimony as to the situation, and he gave it. That, however, is not a precedent warranting the judge to hold the investigation and preliminarily determine a matter which, as has been seen, is vested exclusively in the power and discretion of the President.

For these reasons, it is concluded that the marshal cannot be ordered to police this district in Perry county, and its railroad facilities, nor can this court exercise any jurisdiction under section 5299 of the Revised Statutes, which makes it lawful for the President, in the exercise of his discretion, to employ the army as aforesaid.