**STRUTWEAR KNITTING CO. v. OLSON, Governor, et al.**

No. 2909.

District Court, D. Minnesota, Fourth Division.

Feb. 6, 1936.

Arnold L. Guesmer, Wm. E. MacGregor, and Donald F. Pratt, all of Minneapolis, Minn., for plaintiff.

Harry H. Peterson, Atty. Gen., and William S. Ervin, Deputy Atty. Gen., for defendant Floyd B. Olson.

Frederic D. McCarthy, of St. Paul, Minn., Judge Advocate General, Minnesota National Guard, for defendant Ellard A. Walsh, Adjutant General.

Richard S. Wiggin, City Atty., and John F. Bonner, Asst. City Atty., for defendant Thomas E. Latimer.

Before SANBORN, Circuit Judge, and NORDBYE, and JOYCE, District Judges.

PER CURIAM.

The case has not become moot. The withdrawal of the troops for failure of the mayor to assume full responsibility for their conduct is no recognition of the rights of the plaintiff which are here sought to be

390

vindicated, nor is there any assurance that the acts complained of will not be repeated if an injunction is denied or the case dismissed. See F. Burkart Mfg. Co. v. Case et al. (C.C.A.8) 39 F.(2d) 5; Mobile Gas Co. v. Patterson et al. (D.C.) 288 F. 890; State v. Minneapolis & St. L. Ry. Co., 115 Minn. 116, 131 N.W. 1075; Oklahoma Operating Company v. Love et al., 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596; Kimball et al. v. City of Cedar Rapids et al. (C.C.) 100 F. 802; Roberts et al. v. City of Louisville et al., 92 Ky. 95, 17 S.W. 216, 13 L.R.A. 844, 848; King v. Commonwealth ex rel. Smith, Commonwealth Attorney, 194 Ky. 143, 238 S.W. 373, 22 A.L.R. 535; United States v. Workingmen's Amalgamated Council of New Orleans et al. (C.C.) 54 F. 994, 26 L.R.A. 158, affirmed in Workingmen's Amalgamated Council of New Orleans et al. v. United States (C.C.A.5) 57 F. 85; Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293; United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; Goltra v. Weeks, Secretary of War et al., 271 U.S. 536, 46 S.Ct. 613, 70 L.Ed. 1074. Compare, United States v. Hamburg-Amerikanische, etc., 239 U.S. 466, 36 S.Ct. 212, 60 L.Ed. 387.

The case of Dakota Coal Co. et al. v. Fraser, Adjutant General, et al. (C.C.A.8) 267 F. 130, would be a controlling authority in support of the defendants' contention that the case is moot, were it not for the fact that the defendants do not disclaim the right to call upon their forces to take possession of the plaintiff's property and to prevent its operation, as a lawful means of suppressing disorder.

The withdrawal of the troops did not affect the jurisdiction of this court. The allegations of the complaint show that a substantial federal question is involved, and that is enough. Levering & Garrigues Co. et al. v. Morrin, 289 U.S. 103, 105, 53 S. Ct. 549, 77 L.Ed. 1062.

We are satisfied that this case must be decided upon the facts as they existed at the time the complaint was filed and the interlocutory injunction asked for, since the changed conditions relied upon by the defendants indicate no change of attitude on their part.

The rules of law which are in the main controlling are elementary and are known to every intelligent citizen. The owners of homes, of factories, of churches, of stores, of automobiles, and of every kind of real and personal property, are by the Constitution of the United States protected in their rights to possess their own property and to use it in any lawful manner that they see fit. To guard them in the free enjoyment of these rights guaranteed them by the Constitution is the duty and one of the main purposes of organized government.

The state has no more important interest than the maintenance of law and order. Sterling et al. v. Constantin et al., 287 U.S. 378, 399, 53 S.Ct. 190, 77 L.Ed. 375. It is as much the duty of the state to protect property from destruction by mob violence and to preserve the liberty of the citizen to use his property lawfully as it is to protect the same property from theft or arson. No official intrusted with the enforcement of the law can select the laws which he will enforce or the citizens that he will protect. He has sworn to enforce all laws and to protect all citizens, and there is no escape for him "from the paramount authority of the Federal Constitution." Sterling et al. v. Constantin et al., supra, 287 U.S. 378, at page 398, 53 S.Ct. 190, 195, 77 L.Ed. 375.

"When there is a substantial showing that the exertion of state power has overridden private rights secured by that Constitution, the subject is necessarily one for judicial inquiry in an appropriate proceeding directed against the individuals charged with the transgression." Sterling et al. v. Constantin et al., supra, 287 U.S. 378, at page 398, 53 S.Ct. 190, 195, 77 L.Ed. 375.

The fact that a large group of individuals may have a grievance, just or unjust, against an owner of property will not warrant a resort to violence to remedy that grievance, nor will the hazard, inconvenience, and expense involved in suppressing the violence justify the state in refusing to enforce the law or in depriving the owner of his property or his right to enjoy it. To say that, because the lawful use of property will incite lawless persons to commit crimes and to destroy life and property, such lawful use must be suppressed, is to say that the will of a mob, and not the Constitution of the United States, has become the supreme law of the land.

We realize that when the Governor of a state calls out the troops to suppress insurrection and disorder, he has a "permitted range of honest judgment as to the meas-

ures to be taken in meeting force with force, in suppressing violence and restoring order" (Sterling et al. v. Constantin et al., supra, 287 U.S. 378, at page 399, 53 S.Ct. 190, 196, 77 L.Ed. 375), and that the measures which he may adopt, if conceived in good faith in the face of the emergency and "directly related to the quelling of the disorder or the prevention of its continuance, fall within the discretion of the executive in the exercise of his authority to maintain peace." Sterling et al. v. Constantin et al., supra, 287 U.S. 378, at page 400, 53 S.Ct. 190, 196, 77 L.Ed. 375.

This principle was recognized by this court in the case of Powers Mercantile Co. et al. v. Olson et al., 7 F.Supp. 865, upon which the defendant mayor relies. In that case the Governor of the state had declared martial law in Minneapolis and was in command of the troops which were endeavoring to maintain law and order. He had refused to permit certain citizens to use their trucks upon the streets of Minneapolis. This court was asked to enjoin the enforcement of the military order denying them the right to use their trucks. The Governor personally came before the court and stated that with the forces at his command it had been necessary for him to limit the number of trucks operating upon the streets of Minneapolis, because he could not grant protection to all trucks, and that, if his order was enjoined, there would be outbreaks of violence in the city which his troops would be unable to control and which would threaten the safety of the entire community; that his order was a matter of military necessity. This court was of the opinion that, under the peculiar circumstances of that case, it was not compelled to grant a preliminary injunction, which might result in turning the city over to mob rule.

That surrender to the demands of a public enemy in time of war or accession to the demands of insurrectionists or rioters, at other times, is one way of restoring peace and quelling disorder, no one will deny. It has a direct, even though a dishonorable, relation to the maintenance of order, but no relation at all to the preservation of law. It results in the restoration of peace and order at the sacrifice of law. As the plaintiff has aptly pointed out in this case, it does not require troops or police to assist it in surrendering its constitutional rights to possess and use its plant. It can do that for itself.

■ It is certain that while the state government is functioning, it cannot suppress disorders the object of which is to deprive citizens of their lawful rights, by using its forces to assist in carrying out the unlawful purposes of those who create the disorders, or by suppressing rights which it is the duty of the state to defend. The use of troops or police for such purposes would breed violence. It would constitute an assurance to those who resort to violence to attain their ends that, if they gathered in sufficient numbers to constitute a menace to life, the forces of law would not only not oppose them, but would actually assist them in accomplishing their objective. There could be but one final result, namely, a complete breakdown of government and a resort to force both by the law-abiding and the lawless. A rule which would permit an official, whose duty it was to enforce the law, to disregard the very law which it was his duty to enforce, in order to pacify a mob or suppress an insurrection, would deprive all citizens of any security in the enjoyment of their lives, liberty, or property. The churches, the stores, the newspapers, and the channels of communication and of trade and commerce, and the homes of the people themselves, could be closed by the civil authorities under such a rule, in case the owners had in some way offended a sufficiently large group of persons willing to resort to violence in order to close them. Carried to its logical conclusion, the rule would result in the civil authorities suppressing lawlessness by compelling the surrender of the intended victims of lawlessness. The banks could be closed and emptied of their cash to prevent bank robberies; the post office locked to prevent the mails being robbed; the citizens kept off the streets to prevent holdups; and a person accused of murder could be properly surrendered to the mob which threatened to attack the jail in which he was confined.

■ No contention is made in this case that the plaintiff was doing or attempting to do with its property anything that it did not have a lawful right to do. The defense of the mayor was that his police were unable to maintain law and order at the plaintiff's plant; and he expressed doubt as to the ability of the state forces to protect the plant and its employees if it was permitted to reopen. He asserted his good faith and his belief that the best if not the only way to preserve law and order at the

plant was to keep it closed. The Governor and the Adjutant General have expressed no doubt of the ability of the National Guard to police the plant or to enforce the law. In fairness to the Adjutant General, it should be stated that he is a soldier and is bound to follow the orders of his commander-in-chief. We can take judicial notice of matters of common knowledge, one of which is that the state of Minnesota has an excellent National Guard, well trained and well equipped, which has distinguished itself in the past both in times of war and times of peace and has never found itself unable, when properly commanded, to meet the demands of any situation which has thus far arisen. To find that the military forces of the state of Minnesota would be unable to protect the plaintiff's property or the lives of its employees from a mob would be absurd and an insult to the personnel of a military organization whose courage and patriotism have never been questioned.

The menace to the liberty and property of the plaintiff, we think, arises not from any inability of the civil and military authorities to afford the plaintiff protection, but from the uncertainty that those who owe the duty of giving such protection will perform that duty. The right of the plaintiff to possess and use its plant would exist even though it appeared that an attempt to exercise it would result in the destruction of the plant because of the unwillingness of the state to afford protection.

 It is not necessary to determine who issued the order to the troops to close the plant or who is responsible for their having closed it. The defendants were all necessary and proper parties to this suit. Each had some responsibility for or some control over the use of the troops which were in possession of the plaintiff's property. If this court finds that the limits of executive authority have been transgressed and that equitable relief by injunction is essential to afford the protection to which the plaintiff is entitled, it is the court's duty to grant such relief. Sterling et al. v.

Constantin et al., supra, 287 U.S. 378, at page 403, 53 S.Ct. 190, 77 L.Ed. 375. The limits of executive authority were transgressed, and that beyond any possibility of a doubt. The plaintiff was excluded from the possession and use of its own plant. That it will again be excluded if the defendants are not enjoined is probable. It is entitled to relief.

In order that there may be no misunderstanding as to our position, we state our conclusions as follows:

1. The mayor was entirely justified in requesting the Governor to send troops to assist in the preservation of law and order, and it was his duty to do so.

2. The Governor and the Adjutant General were entirely justified in sending troops to aid in the preservation of law and order. It was their duty to take that course.

3. The defendants had the right to place troops at and about the plant of the plaintiff to prevent the destruction of life and property, and it was their duty to do that.

4. The defendants, as a means of suppressing disorder, had no right to use the troops for the purpose of depriving the plaintiff of its right to possess its own property, or to prevent it from using its property in the conduct of its lawful business. The injunction which we shall grant accords to the plaintiff nothing more than the right to have and enjoy what belongs to it. It prohibits the defendants from depriving it of that right.

 We are satisfied that we are without power to command the executive branch of the state government to perform the duties imposed upon it with respect to the maintenance of law and order. The exclusive discretion in that regard is vested in the executive. Martin v. Mott, 12 Wheat. 19, 30, 6 L.Ed. 537; Consolidated Coal & Coke Co. v. Beale et al. (D.C.S.D.Ohio) 282 F. 934.

Let this opinion be made a part of the foregoing findings of fact, conclusions of law, and order.