JOYNER et al. v. BROWNING et al.
No. 98.

District Court, W. D. Tennessee, E. D.
Aug. 9, 1939.

K. T. McConnico, of Nashville, Tenn., and Charles M. Bryan, Phil M. Canale, and Frank H. Gailor, all of Memphis, Tenn., for plaintiffs.

Thomas H. Malone and Wm. J. Wade, both of Nashville, Tenn., for defendants.

Before HICKS, Circuit Judge, and TAYLOR and MARTIN, District Judges.

PER CURIAM.

This suit was brought by Prentice Cooper, A. T. Stewart and W. E. Hudson, candidates for the Democratic nominations for the offices of Governor of Tennessee, United States Senator, and Railroad and Public Utilities Commissioner, respectively, in the primary election to be held on August 4, 1938; by Fred Bauer and others, members of the Democratic Primary Board of Shelby County; by Frank Barton and others, candidates for members of the Democratic State Executive Committee; by Marion S. Boyd and others, candidates for various local offices of Shelby County in the general election to be held on the same day; and by E. A. Powell and others, citizens and taxpayers of Shelby County, some of whom are women and others of whom are members of the negro race; against Gordon Browning, Governor of Tennessee, T. Galen Tate and others, constituting the Board of Election Commissioners of Shelby County; R. O. Smith, Adjutant General of the State, and divers officers of the National Guard.

The bill avers that Cooper, Stewart, Hudson, Barton and others as such candidates were eligible to be voted for in the primary by every qualified Democratic voter in Shelby County and by every voter who would announce his intention to support the candidates of the Democratic party; that there appear upon the registration books of the County the names of over 100,000 voters who registered in the general registration of August 1937, thousands of whom were women and a large number of whom were negroes; that plaintiffs Bauer and others, members of the Shelby County Primary Board, were charged with the duty of holding the primary and permitting every qualified Democrat to vote therein; that there was a heavy registration in the general registration in August 1937 and in the supplemental registration in July 1938; and that there were more than 125,000 qualified and registered voters upon the registration

books; that the same requirements for registration applied to the general election as applied to the primary and that plaintiffs Boyd and others as candidates therein had a right to have a full, fair and free expression of the votes of the electorate, uninfluenced by violence, fraud or conspiracy upon the part of any of the defendants and irrespective of when the voters registered or of their race, or any other circumstances surrounding them; that plaintiffs Powell and others who sued as qualified voters for themselves, and all others similarly situated, have the right to have their votes cast both in the primary and general election free from any such violence, coercion or fraud; that the plaintiffs who are women represent a class who on account of their sex are subject to fear and intimidation and that plaintiffs who are negroes have the right to be permitted to vote without coercion or browbeating.

The bill avers that defendant Browning, Governor, was a candidate for renomination and had publicly announced that he intended to set aside the general registration held in Shelby County in August 1937 and deprive plaintiffs and other electors who registered therein of their right to vote; that he made this announcement in disregard of the opinion of the Attorney General of the State that he was unauthorized to do so; that Browning, as Governor, together with Smith, the Adjutant General, had entered into a conspiracy with the Commissioners of Election of Shelby County to disfranchise a large portion of the electorate for tne purpose of fostering his candidacy for renomination; that as a part of this conspiracy the Election Commissioners of Shelby County, appointees of the Governor, through his controlled State Election Commission, had announced that no persons could re-register in 1938 who had registered in 1937 unless they had moved from their former places of residence; that this created a situation whereby citizens who registered in 1937 would be automatically disfranchised. As tending to show such conspiracy, the bill sets out alleged excerpts from divers campaign addresses, made by the Governor in furtherance of his candidacy. It is futile to restate these excerpts here.

The bill avers that these utterances indicated a purpose of the Governor to prevent the electors in Shelby County who registered in 1937 from voting in the Democratic Primary and General Election on August 4, 1938.

It further avers that the Governor had entered upon a campaign of terror in Shelby County; that he had had the Election Commissioners deliberately to select remote places for registration and had had the Crime Commission to go among the people, particularly among negroes, and attempt to see their registration certificates and upon seeing them to punch them with a ticket punch and advise that they thereupon became void; that he had had his "purgers" represent that they were Government officials in thus carrying out their plans to limit and destroy the right of franchise; that he had let it be known that he intended to use State troops to carry out his boast of stopping the voting by local voters in Shelby County and to terrorize them.

The bill avers that the defendant, the Adjutant General, had said on July 30th that the 117th Infantry of the National Guard would "be mobilized tomorrow subject to duty in the State" and that newspapers stated that railroad reservations had been made to move troops into Memphis on August 3rd.

The bill charges on information and belief that the purpose of the Governor was to create a reign of terror in Shelby County upon election day so that timorous electors would stay at home and that those who attempted to vote would be subjected to intimidation; that the Governor knew that there was no state of public disorder in Shelby County and no hint or threat thereof; that the courts were open; that there was no armed body of civilians in Shelby County and that the citizens were quiet, peaceable and obedient to any processes of the court, but that the Governor's design was to order the militia into the County without justification and that such order would be arbitrary, capricious and repugnant to both the Constitution of Tennessee and of the United States; that neither the Sheriff nor any civil authority had requested the use of military officers; that the peace officers of the County were adequate for any police duty which might arise; that the Legislature had not authorized the calling out of armed forces nor declared that any condition of rebellion or invasion was threatened; that the Governor was seeking to create disorder in Shelby County; that he had arranged to speak there on August 1, 1938 and had notified numbers of his supporters living outside of Shelby County to be present; that he was attempting to create a disturbance to justify himself in sending troops into the County.

The bill avers that the Governor had arranged with the Adjutant General to cancel the leave under which certain units of the National Guard were to attend maneuvers in Mississippi for the sole purpose of keeping the troops available for service in Shelby County; that the Governor had advised his Secret Police in Shelby County that troops would be sent there on election day; that while he was purporting to act under color of his office he was not acting honestly and lawfully as such, nor in the pursuance of any powers conferred upon him but for the purpose of forwarding his candidacy for renomination; that the Adjutant General had agreed to send the troops and that the Governor would order them sent into Shelby County unless restrained by the court; that the effect would be to intimidate the negro voters as well as the more timorous white voters and that the purpose was to create a condition of terror, violence and disorder; that the militia would be used to prevent a peaceable and orderly election and that it was the purpose of the Governor to prevent many thousands of voters from voting in the election and primary and that the effect of the conspiracy between the Governor and his co-defendants would be to deprive Shelby County of a Republican form of government and because it was the largest county in the state, to deprive the state itself of such form of government and substitute military despotism therefor.

The bill alleges that the definite purpose of the Governor, as announced by him, was to prevent thousands of people who registered in 1937 and would not be permitted to register in 1938, if such had been necessary, from voting at all, with the result that there would be anarchy and disorder and the probable prevention of any election at all in Shelby County; that taking from the citizens their right to vote in this manner would be taking their property from them without due process of law, in violation of the 14th Amendment, U.S.C.A.Const., and that forbidding them to vote upon the 1937 registration certificates would be discrimination, in violation of the 14th, 15th and 19th Amendments, and that the terrorization of women and negro voters would violate the 14th, 15th and 19th Amendments; that if the election in Shelby County should be destroyed by military dictatorship of the Governor, or if a large number of voters were thus prevented from voting, the candidates would be deprived of valuable property rights and suffer irreparable injury, for which there was no remedy except the injunctive processes of the court.

The bill avers that notwithstanding the provisions of Article III, Sec. 5 of the Constitution of the State of Tennessee, which prohibits the Governor from calling out the militia, except in cases of rebellion and invasion, and then only by the Act of the General Assembly, and the further provision of Article 1, Sec. 24, which provides that in all cases the military shall be kept in strict subordination to the civil authority, and Article I, Section 25, providing that no citizen, with certain exceptions, shall be subjected to punishment under the martial or military law, etc., the Governor is seeking to act under the provisions of Chapter 249 of the Public Acts of the General Assembly of Tennessee for 1937, wherein it is provided that the Governor shall have power "within his discretion to assign the Tennessee National Guard, or any part thereof, to any duty in the execution of the laws of the State, or to employ said Guard in any locality not sufficiently protected by Civil authorities against invasion, rebellion, insurrection, riot, storm, flood, fire, or other emergency or disaster," and that the effort to grant to the Governor the powers quoted from Chapter 249 of the Acts of 1937 is in direct contravention of the provisions of the State Constitution above referred to and is therefore illegal and void.

The bill prays for a temporary restraining order against all defendants, directing them to cease, desist and refrain from moving or attempting or threatening to move any portion of the National Guard into Shelby County on or before the day of the election and primary and restraining the Election Commissioners of Shelby County from issuing any orders or rules whereby any election officer would refuse to permit persons holding registration certificates issued in 1937 from voting in the general election of August 4, 1938, and from taking any steps whereby the 1937 registration would be treated as void; that the court call a three judge court to sit upon the application for an interlocutory injunction and pass upon the constitutionality of Chapter 249 of the Acts of 1937 and that upon a final hearing this statute be held unconstitutional and void and a perpetual and permanent injunction issue against the defendants.

Because the bill sought to have the District Judge organize a court of three judges under the provisions of the Judicial Code (Sec. 266 as amended, Title 28 U.S.C., Sec. 380, 28 U.S.C.A. § 380) to act upon the application for an interlocutory injunction, the Judge in the discharge of his duty and in the exercise of judicial discretion, convened this court as it is now constituted.

Defendants filed a motion to dismiss upon the ground, among others, that the bill seeks to enjoin the action of state officials under a state statute but does not aver that the statute violates the Federal Constitution. An answer was also filed.

■ But, these pleadings aside, it is our duty to determine the question of jurisdiction as a court of three judges. The court must take jurisdiction if it should, but it is equally true that it will not take jurisdiction if it should not. Ex parte Young, 209 U.S. 123, 142, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann. Cas. 764.

■ The statute, Title 28 U.S.C. Sec. 380, 28 U.S.C.A. § 380, by its terms is applicable here if an interlocutory injunction is sought to restrain the enforcement of a state statute upon the grounds of its unconstitutionality, otherwise not. But it has been consistently held that the term "unconstitutionality" refers to an asserted conflict between the state statute and the Federal Constitution. Louisville & N. R. Co. v. Garrett, 231 U.S. 298, 304, 34 S. Ct. 48, 58 L.Ed. 229; Cumberland Tel. & Tel. Co. v. Public Service Comm., 260 U.S. 212, 216, 43 S.Ct. 75, 67 L.Ed. 217; Ex parte Buder, 271 U.S. 461, 463, 467, 46 S.Ct. 557, 70 L.Ed. 1036; Ex parte Collins, 277 U.S. 565, 569, 48 S.Ct. 585, 72 L.Ed. 990; Stratton v. St. Louis S. W. Ry. Co., 282 U.S. 10, 14, 15, 51 S.Ct. 8, 75 L.Ed. 135; Oklahoma Gas & Electrict Co. v. Packing Co., 292 U.S. 386, 390, 54 S.Ct. 732, 78 L.Ed. 1318.

■ Affidavits have been filed both in support of the bill and contra. A large number of newspaper publications touching the general situation in Memphis with reference to the primary and general election have also been filed but in determining the question of jurisdiction we are limited to the averments of the bill itself. Mosher v. Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148; Levering & G. Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062; Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152; Polk Co. et al. v. Glover, 305 U.S. 5, 59 S.Ct. 15, 83 L.Ed. 6, decided by the Supreme Court November 7, 1938.

■ We have sought in vain for any averment in the bill that the excerpt above quoted from Chapter 249 of the Public Acts of Tennessee for 1937, the statute attacked, contravenes in any particular any provision of the Federal Constitution and the court as now constituted is therefore not at liberty to proceed further, and so adjudges. California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323. The question whether the plaintiffs are entitled to an interlocutory injunction to restrain the acts threatened therein is one particularly for the determination of the District Court. We regard this opinion as an appropriate statement of findings of fact and conclusions of law as required by Public Service Commission v. Wisconsin Telephone Co., 289 U.S. 67, 53 S.Ct. 514, 77 L.Ed. 1036, and file it as such.

MARTIN, District Judge.

Inasmuch as the majority of the three-judge court holds that affidavits filed both in support of the bill and against it must be disregarded and that the three-judge court is without jurisdiction to proceed, it becomes necessary for the District Judge who issued the temporary restraining order in this cause to express his separate opinion.

After hearing the elaborate oral arguments and reading the briefs of counsel and carefully considering the record, the writer adheres to his opinion heretofore orally pronounced, and considers that his temporary restraining order was providently and properly entered, and that an interlocutory injunction should be issued against the same unlawful and unconstitutional acts and threatened actions of the defendants heretofore temporarily restrained. The same reasons for interlocutory injunction now govern as compelled the issuance of the temporary restraining order. The question is academic, but nevertheless most important.

■ The right to vote in a party primary election is protected by the Fourteenth Amendment to the Constitution of the United States, U.S.C.A. Nixon v. Herndon, 273 U.S. 536, 540, 541, 47 S.Ct. 446, 71

L.Ed. 759; Nixon v. Condon, 286 U.S. 73, 88, 52 S.Ct. 484, 76 L.Ed. 984, 88 A.L.R. 458; Grovey v. Townsend, 295 U.S. 45, 55 S.Ct. 622, 79 L.Ed. 1292, 97 A.L.R. 680.

The Supreme Court of Tennessee, speaking through its Chief Justice, in Gates v. Long, 172 Tenn. 471, 477, 113 S.W.2d 388, 391 (Feb. 12, 1938) said: "With respect to their right to vote in the primary elections of their party, the Supreme Court in the Texas cases has three times said that citizens were entitled to the protection of the Fourteenth Amendment to the Federal Constitution [citing the three decisions, supra]."

■ Regardless of the rule in other jurisdictions, the right to vote, the right to become a candidate, and the right to hold public office are property rights in Tennessee. State v. Staten, 6 Cold. 233, 46 Tenn. 233; Dodd v. Weaver, 2 Sneed 670, 34 Tenn. 670; Mayor, etc., of City of Memphis v. Woodward, 12 Heisk. 499, 59 Tenn. 499, 501, 27 Am.Rep. 750; Moore v. Sharp, 98 Tenn. 65, 68, 38 S.W. 411; Nelson v. Sneed, 112 Tenn. 36, 48, 83 S.W. 786; Maloney v. Collier, 112 Tenn. 78, 100, 83 S.W. 667; Malone v. Williams, 118 Tenn. 390, 467, 468, 103 S.W. 798, 121 Am. St.Rep. 1002; Beasley v. Cunningham, 171 Tenn. 334, 343, 103 S.W.2d 18, 110 A.L.R. 306.

In the early case first cited, supra, (6 Cold. 233, 46 Tenn. 233, 243) the Court said: "The elective franchise is a right which the law protects and enforces as jealously as it does property in chattels or lands. It matters not by what name it is designated—the right to vote, the elective franchise, or the privilege of the elective franchise—the person who, under the Constitution and laws of the State, is entitled to it, has a property in it, which the law maintains and vindicates, as vigorously as it does any right of any kind which men may have and enjoy."

■ The primary nomination of a United States Senator was involved in the subject matter of this lawsuit. It has been held that the right to vote for members of Congress is not derived merely from the constitution and laws of the state from which they are chosen, but has its foundation in the Constitution and laws of the United States. Twining v. New Jersey, 211 U.S. 78, 97, 29 S.Ct. 14, 53 L.Ed. 97; Ex parte Yarbrough, 110 U.S. 651, 663, 664, 4 S.Ct. 152, 28 L.Ed. 274; Wiley v. Sinkler, 179 U.S. 58, 21 S.Ct. 17, 45 L.Ed. 84.

Original jurisdiction is directly given the District Courts by Title 28, Sec. 41, in subd. (11) U.S.C.A., of all suits to enforce the rights of citizens of the United States to vote in the several states; and, in (14): "Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

■ The jurisdiction and power of a United States Court to restrain the Governor of a state from threatened tyrannical, unlawful and unconstitutional acts has been plainly recognized in Sterling, Governor of Texas v. Constantin, 1932, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375.

■ A fortiori is this true where the governor assumes to act under a state law plainly void under the state constitution. The statute in question, Chapter 249 of the Acts of 1937, in its pertinent provisions is obviously violative of several provisions of the Constitution of Tennessee. See Article I, Sec. 24; Article I, Sec. 25; Article III, Sec. 5; Article XI, Sec. 16; Green & Currey v. State, 15 Lea 708, 83 Tenn. 708.

In the Constantin case, supra, the Supreme Court of the United States affirmed the judgment of the District Court in restraining the violation of the Federal Constitution by actions of state officials under color of state law. The Chief Justice said (287 U.S. 404, 53 S.Ct. 197, 77 L.Ed. 375): "It is also plain that there was no adequate remedy at law for the redress of the injury, and, as the evidence showed that the Governor's orders were an invasion under color of state law of rights secured by the Federal Constitution, the District Court did not err in granting the injunction."

In this unanimous opinion, the Court said (287 U.S. 392, 53 S.Ct. 193, 77 L.Ed. 375): "When the Governor calls out the troops of Texas, it is not as a military but as a civil officer."

The Court said, further, (287 U.S. 393 53 S.Ct. 193, 77 L.Ed. 375): "The District Court had jurisdiction. The suit is not

against the state. The applicable principle is that, where state officials, purporting to act under state authority, invade rights secured by the Federal Constitution, they are subject to the process of the federal courts in order that the persons injured may have appropriate relief. Ex parte Young, 209 U.S. 123, 155, 156, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann.Cas. 764; Home Telephone & Telegraph Co. v. Los Angeles, 227 U.S. 278, 292, 293, 33 S.Ct. 312, 57 L.Ed. 510; Truax v. Raich, 239 U.S. 33, 37, 38, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283; Cavanaugh v. Looney, 248 U.S. 453, 456, 39 S.Ct. 142, 63 L.Ed. 354; Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255. The Governor of the state, in this respect, is in no different position from that of other state officials. See Davis v. Gray, 16 Wall. 203, 210, 233, 21 L.Ed. 447; Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct 595, 76 L.Ed. 1155 [81 A.L.R. 1402]; Binford v. McLeaish & Co., 284 U.S. 598, 52 S.Ct. 207, 76 L.Ed. 513; Id. (D.C.) 52 F. (2d) 151, 152; Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167."

The Court said, further (287 U.S. 397, 398, 53 S.Ct. 195, 77 L.Ed. 375), in answering the argument that a United States Court was powerless to intervene and that the Governor's order had the quality of a supreme and unchallengeable edict, overriding all conflicting rights of property and unreviewable through the judicial power of the Federal Government: "If this extreme position could be deemed to be well taken, it is manifest that the fiat of a state Governor, and not the Constitution of .the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases, the futility of which the state may at any time disclose by the simple process of transferring powers of legislation to the Governor to be exercised by him, beyond control, upon his assertion of necessity. Under our system of government, such a conclusion is obviously untenable. There is no such avenue of escape from the paramount authority of the Federal Constitution. When there is a substantial showing that the exertion of state power has overridden private rights secured by that Constitution, the subject is necessarily one for judicial inquiry in an appropriate proceeding directed against the individuals charged with the transgression. To such a case the

federal judicial power extends (article 3, § 2), and, so extending, the court has all the authority appropriate to its exercise."

With respect to the range of discretion of a State Governor to suppress disorder by force, the Court stated (287 U.S. 401, 53 S.Ct. 196, 77 L.Ed. 375): "What are the allowable limits of military discretion, and whether or not they have been overstepped in a particular case, are judicial questions."

In Sunday Lake Iron Co. v. Wakefield Township, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154, it was said: "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."

In Ex parte Young, 209 U.S. 123, 155, 156, 28 S.Ct. 441, 452, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764, the Supreme Court said: "The various authorities we have referred to furnish ample justification for the assertion that individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or a criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."

This language is quoted with approval in Home Tel. & Tel. Co. v. City of Los Angeles, 227 U.S. 278, 293, 33 S.Ct. 312, 57 L.Ed. 510, in which case, the Court said, with respect to the Fourteenth Amendment (227 U.S. 287, 33 S.Ct. 315, 57 L.Ed. 510): "The theory of the Amendment is that where an officer or other representative of a state, in the exercise of the authority with which he is clothed, misuses the power possessed to do a wrong forbidden by the Amendment, inquiry concerning whether the state has authorized the wrong is irrelevant, and the Federal judicial power is competent to afford redress for the wrong by dealing with the officer and the result of his exertion of power."

In Terrace v. Thompson, Att'y Gen. of the State of Washington, 263 U.S. 197, 214, 44 S.Ct. 15, 17, 68 L.Ed. 255, the Court said: "Equity jurisdiction will be exercised to enjoin the threatened enforcement of a state law which contravenes the federal Constitution wherever it is essential in

order effectually to protect property rights and the rights of persons against injuries otherwise irremediable; and in such a case a person, who as an officer of the state is clothed with the duty of enforcing its laws and who threatens and is about to commence proceedings, either civil or criminal, to enforce such a law against parties affected, may be enjoined from such action by a Federal court of equity." See, also, Cavanaugh v. Looney, Att'y Gen., 248 U.S. 453, 456, 39 S.Ct. 142, 63 L.Ed. 354; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.,1916D, 545, Ann.Cas.1917B, 283; Constantin v. Smith, D.C., 57 F.2d 227; Strutwear Knitting Co. v. Olson, D. C., 13 F.Supp. 384.

In Fidelity & Deposit Co. v. Tafoya, 270 U.S. 426, 434, 46 S.Ct. 331, 332, 70 L.Ed. 664, the Supreme Court said: "It is suggested that the District Court had no jurisdiction because the bill does not allege that the statute is unconstitutional, but only that the statute as construed and applied by the defendants is so. But even if the statute did not plainly purport to justify and require the threatened action, or if the bill fairly taken did not import a denial of the constitutionality of the law as applied to this case, the plaintiff still would be entitled to come into a court of the United States to prevent such an alleged violation of its constitutional rights. Raymond v. Chicago Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78, 12 Ann.Cas. 757; Home Tel. & Tel. Co. v. Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510; Cuyahoga River Power Co. v. Akron, 240 U.S. 462, 36 S.Ct. 402, 60 L.Ed. 743."

In Iowa-Des Moines Bank v. Bennett, 284 U.S. 239, 246, 52 S.Ct. 133, 136, 76 L.Ed. 265, it was said that "When a state official, acting under color of state authority, invades, in the course of his duties, a private right secured by the Federal Constitution, that right is violated, even if the state officer not only exceeded his authority but disregarded special commands of the state law." See decisions of the Supreme Court cited in footnote 5, page 246, of 284 U.S., page 136 of 52 S.Ct., 76 L.Ed. 265, supra.

In Yick Wo v. Hopkins, 118 U.S. 356, 373, 6 S.Ct. 1064, 1073, 30 L.Ed. 220, the Supreme Court said: "Whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the state itself, with a mind so unequal and oppressive as to amount to a practical denial by the state of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the fourteenth amendment to the constitution of the United States. Though the law itself be fair on its face, and impartial in appliance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution."

■ From this, it plainly follows that one district judge of the United States, notwithstanding Title 28, Sec. 380, U.S. C.A., has the right and duty to enjoin unconstitutional actions of a state Governor and other state officials, not upon the basis of the unconstitutionality of the state statute pursuant to which the state official purports to act, but upon the unconstitutionality under the Federal Constitution of the actions of such state official, or officials, under color of such state statute.

■ It is manifest upon the face of the bill that the definite purpose of Gordon Browning, the then dictatorial and tyrannical Governor of Tennessee, as announced by him, was to prevent thousands of persons from voting who, in fact, were lawfully entitled to vote, with the probable result of the prevention of any election at all in Shelby County. The threatened use of troops and the threat of military dictatorship by the former Governor deprived citizens of the right to vote and candidates of valuable property rights to their irreparable injury, for which there was no redress except the injunctive processes of this court.

The majority opinion of the three-judge court, assembled pursuant to the prayer of the bill of complaint, details the charges of acts and threatened acts by the defendant constituting plain violation of rights of citizens of the United States guaranteed by the Fourteenth Amendment to the Federal Constitution. These charges are sustained by supporting affidavits and exhibits.

Applying the principles herein discussed to the facts of this case, plaintiffs are entitled to an interlocutory injunction against the same unlawful and unconstitutional acts and threatened acts heretofore forbidden by temporary restraining order. It is so ordered.